## WALTER R. CLIFFE CO. v. DU PONT ENGINEERING CO.

(District Court, D. Delaware. April 9, 1924.)

No. 1.

1. **Contracts** ⬅299(2)—**Implied obligation on part of contractor to pay damages for hindering subcontractor.**
    Out of covenant of subcontractor to perform by particular day, or pay liquidated damages, there arises implied obligation that subcontractor shall not be hindered, and that for any breach thereof contractor will pay damages.

2. **Contracts** ⬅168—**Covenants not implied, if in conflict with express provisions.**
    Covenants may not be implied, if in direct conflict with express provisions of contract.

3. **Contracts** ⬅162—**No provisions disregarded as inconsistent, unless necessary.**
    No provision of contract is to be disregarded as inconsistent with other provisions, unless no other reasonable construction is possible.

4. **Contracts** ⬅299(2)—**Rule as to implied contract of contractor to pay damages for hindering subcontractor held inapplicable.**
    Where main contract provided contractor could make no charge for hindrances or delays and subcontract made main contract part thereof so far as consistent, but required that subcontractor do work before certain date or pay liquidated damages, *held*, that rule as to implied covenant of contractor to pay damages to subcontractor for hindrances or delay did not apply.

At Law. Action by the Walter R. Cliffe Company against the Du Pont Engineering Company. On demurrer to declaration. Demurrer sustained.

Robert H. Richards and James I. Boyce, both of Wilmington, Del., for plaintiff.

William S. Hilles and J. P. Laffey, both of Wilmington, Del., for defendant.

MORRIS, District Judge. Du Pont Engineering Company, the defendant, and "the mayor and council of Wilmington," acting upon the

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes·

recommendation of the board of harbor commissioners, entered into a general contract for the construction by the former of unit No. 1, Wilmington marine terminal, on the Christiana river. Soon thereafter the defendant entered into four several contracts with the plaintiff, Walter R. Cliffe Company, whereby the latter undertook to perform by August 12, 1922, or sooner, all the work called for by four several items of defendant's primary contract. The plaintiff, construing each of the four subcontracts to contain implied covenants that the defendant would permit the plaintiff to complete the work therein called for within the time therein specified, and that the defendant would pay unliquidated damages for any delays in the completion of the work not attributable to the plaintiff, instituted this action of covenant to recover damages from the defendant for its alleged breach of such implied undertakings. The declaration contains four counts, in each of which the primary contract and a different one of the subcontracts are set out in hæc verba. The alleged breach is that the defendant hindered and delayed the plaintiff from performing and completing its work during the time provided therefor in the subcontract.

To each of these counts the defendant has demurred, and by certain of the causes of demurrer assigned challenges the correctness of plaintiff's assumption that the contracts give rise to the implied covenants for whose breach the plaintiff sues or, if such covenants may be implied, the right of plaintiff to recover damages for their breach. The issue of law thus raised turns, in the main, upon articles 3, 4, and 5 of the subcontracts and paragraph 498 of the primary contract, which read thus:

"Article 3. The subcontractor and the contractor agree to be bound by the terms of the aforesaid terminal contract, including the general conditions, drawings, and specifications forming a part thereof, or as same may be modified and/or supplemented by this subcontract, so far as applicable to the work hereunder.

"Article 4. The subcontractor agrees to assume toward the contractor all the obligations and responsibilities, so far as applicable to this subcontract, that the contractor, by its contract, assumes toward the commissioners.

"Article 5. The terminal contract hereinbefore referred to between the Du Pont Engineering Company and the city of Wilmington specifies that the entire work covered under the same shall be completed on or before August 12, 1922. The subcontractor hereunder agrees to commence the work comprehended under this contract on or before September 8, 1921, and to complete the several portions and the whole of the said work by August 12, 1922, or sooner, provided that the prosecution of the several portions of the work covered by other subcontracts will permit this subcontractor to carry on its work in such a manner as to complete as above specified. It is mutually agreed that time is of the essence of this contract, and that damages to the contractor for failure of the subcontractor to fully complete the work on or before August 12, 1922, shall be twenty-five dollars ($25.00) for each day after said date, Sundays and holidays excepted, that shall elapse before the work shall be fully completed, which amount shall in no event be considered as a penalty, but as liquidated and adjusted damages due the contractor because of said delay, which damages the subcontractor shall promptly pay, and the contractor may retain the amount thereof from any moneys which otherwise would be payable hereunder to the subcontractor."

"498. *Hindrances and Delays.*—No charge shall be made by the contractor for hindrances or delays from any cause whatever during the progress of any portion of the work contemplated by the specifications, but the commissioners may grant an extension of time for the completion of the work, provided they

are satisfied such delays or hindrances were due to extraordinary causes, or to acts of omission or commission by the commissioners, but such extensions of time shall in no instance exceed the time actually lost to the contractor by reason of such causes, provided the contractor shall give the commissioners immediate notice in writing of the cause of the detention or delay."

[1, 2] To establish the existence of the asserted implied obligations of the defendant the plaintiff invokes the general rule of law that out of the covenant of a subcontractor to perform certain work by a particular day, or, in default, to pay to the contractor a sum of money as liquidated damages, there arises an implied obligation on the part of the contractor that the subcontractor shall not be hindered or delayed in the performance of his work by the contractor, and that for any breach thereof the contractor will pay damages. United States v. United Engineering Co., 234 U. S. 236, 34 Sup. Ct. 843, 58 L. Ed. 1294; Norcross v. Wills, 198 N. Y. 336, 341, 91 N. E. 803; Hart v. American Concrete Steel Co. (D. C.) 278 Fed. 541, 544; Stehlin-Miller-Henes Co. v. City of Bridgeport, 97 Conn. 657, 117 Atl. 811, 813; Williston on Contracts, § 1293.

The plaintiff concedes, however, that this rule may be "made inapplicable by the express and peculiar provisions of the subcontract." The plaintiff likewise concedes that, where a subcontractor undertakes to work according to the original contract with the owner, the two contracts form, in effect, but one contract, and that the subcontractor is entitled to the same benefits and bound by the same conditions as the contractor under the original contract, except in so far as the original contract is inconsistent with the subcontract. Expanded Metal Fireproofing Co. v. Noel Const. Co., 87 Ohio, 428, 101 N. E. 348.

The plaintiff further concedes that the implied covenant which it derives from article 5 of the subcontract, and upon which its suit is founded, "is inconsistent with paragraph 498 of the general contract." It concludes that:

"Hence paragraph 498 is not included by reference in the subcontract, nor did the subcontractor assume toward the contractor the obligation thereof."

With this conclusion the defendant takes issue. As I view plaintiff's conclusion, an inevitable corollary of it is that paragraph 498 of the main contract would constitute a part of the subcontract, but for the implied covenant which the plaintiff derives from article 5 of the subcontract. This closely approaches, if, indeed, it is not equivalent to, a proposition that covenants may be implied notwithstanding they are in direct conflict with express provisions of the contract. But that cannot be. 6 R. C. L. 856, 857. In Brodie v. Cardiff Corp., [1919] A. C. 337, 338, Lord Atkinson said:

"The introduction of an implied term into the contract of the parties * * * can only be justified when the implied term is not inconsistent with some express term of the contract and where there arises from the language of the contract itself, and the circumstances under which it was entered into, an inference that it is absolutely necessary to introduce the term to effectuate the intention of the parties."

[3] But, apart from this, under the broad provisions of articles 3 and 4 of the subcontract, the main contract became part and parcel of

the subcontract in so far as their provisions are consistent. No provision of a contract is to be disregarded as inconsistent with other provisions, unless no other reasonable construction is possible. Expanded Metal Fireproofing Co. v. Noel Const. Co., 87 Ohio, 428, 101 N. E. 348. Turning to the rules of statutory construction, which seem not inapplicable here, it has been held that general and specific provisions in apparent contradiction, whether in the same or different statutes, and without regard to priority of enactment, may subsist together, the specific qualifying and supplying exceptions to the general. Townsend v. Little, 109 U. S. 504, 512, 3 Sup. Ct. 357, 27 L. Ed. 1012. And again, an exception in a statute amounts to an affirmation of the application of its provisions to all other cases not excepted. Bend v. Hoyt, 13 Pet. 263, 271, 10 L. Ed. 154. Moreover, exceptions are to be construed strictly.

[4] I think article 5 of the subcontract and paragraph 498 of the main contract may readily stand together. So standing, the provision of the main contract prevents the introduction into the subcontract of the implied covenants relied upon and sought to be justified by the plaintiff and it relieves the defendant from any damages to which the plaintiff might otherwise, perhaps, be entitled for hindrances or delays caused by the defendant in the completion of the plaintiff's work within the time specified in the subcontract.

This conclusion makes it unnecessary to pass upon the remaining causes of demurrer, which pertain, not to the existence of a cause of action, but only to the particularity of the declaration.

For the reasons stated, the demurrer to each count must be sustained.