[Civ. No. 5426.    Third Appellate District.—November 2, 1936.]

RALPH ARMSTRONG, Respondent, v. TONY SENGO
et al., Appellants.

[Civ. No. 5427.    Third Appellate District.—November 2, 1936.]

WILLIAM E. LOCEY, Respondent, v. TONY SENGO
et al., Appellants.

[Civ. No. 5428.    Third Appellate District.—November 2, 1936.]

WAYNE F. GRISHABER, a Minor, etc., Respondent, v.
TONY SENGO et al., Appellants.

[Civ. No. 5429.    Third Appellate District.—November 2, 1936.]

RALPH W. SMITH, a Minor, etc., et al., Respondents, v.
TONY SENGO et al., Appellants.

Hamilton Wright for Appellants.

Hudson Ford for Respondents.

THOMPSON, J.—These four suits for damages growing out of the same automobile accident were consolidated for trial. From separate judgments which were rendered against the same defendants in each case they have appealed. The four appeals are presented to this court upon one transcript of proceedings. The judgments against Tony Sengo, the owner of the machine, in no instance exceeds the

amount limited by the provisions of section 1714¼ of the Civil Code. The several amounts of damages awarded are not challenged as excessive. The causes were tried by the court sitting without a jury.

There is a conflict of evidence, but the following facts are sufficiently supported by the record: The defendant Tony Sengo, who lived near Maxwell, owned a Chevrolet touring automobile which he was unable to and had never personally driven. He signed the application of his minor son, William Sengo, for an operator's license, and thereby became liable for the negligence of his son under the provisions of section 62 (c) of the California Vehicle Act (now sec. 352 of the Vehicle Code). For several years the son drove this machine with the express consent of his father. The son always used this car at will for his father's benefit and for his own personal service. On the occasion of the accident which is involved in these suits the son was using the automobile for his own benefit with the implied consent of his father. At the time of the accident the machine was driven by Ralph Young at the request of William Sengo and under his control. He rode in the automobile. On the night of January 11, 1934, William Sengo drove to the high school building, which is situated on Oak Street in the town of Maxwell. Oak Street extends in an easterly and westerly direction through the town of Maxwell. The center of the street is paved with concrete 18 feet in width. Three blocks easterly of the high school building Pacific Street crosses Oak Street at a right angle. About 100 feet easterly from the corner of Oak and Pacific Streets the Armory building is located on the northerly side of Oak Street. That building fronts on Oak Street and is 40 feet in width. Oak Street is 80 feet in width at that point. Across Oak Street, opposite the armory, is a large vacant lot, which was well lighted, where the local militia belonging to the 184th Infantry of the National Guard was accustomed to drill. In going to and coming from this lot the militia sometimes executed certain maneuvers across and upon Oak Street in that immediate vicinity. It had been actively drilling for some time prior to the time of the accident in question. That fact was known to the citizens of that community. After dark, on the evening of January 11th, a squad of fifteen regularly enlisted militiamen, con-

sisting of three officers and twelve private soldiers had just completed their drilling under the direct control of Lieutenant Wells. Each of the plaintiffs was regularly enlisted in this local militia. They were engaged in drilling pursuant to the military laws of the state of California. The squad was marched in sets of fours to a point a few feet westerly of the armory, and prior to the accident it was brought to a halt on the northerly portion of the concrete pavement of Oak Street. At the command of Lieutenant Wells they stood in that position at attention, facing the east. The company was not then marching along the highway. All of them stood northerly of the center line of the paved portion of the street on the proper side thereof. Immediately upon halting in that position the lieutenant placed them in charge of Sergeant Durfor preparatory to dismissing the squad. The street was then well lighted. There was a city light over the center of Pacific and Oak Streets about 60 feet to their rear. There were also two lights in front of the armory a similar distance ahead of them.

Shortly prior to this time the defendant William Sengo, together with two boy friends and a school girl, got into his automobile at the schoolhouse about three blocks west of the auditorium and drove easterly along Oak Street. Sengo asked his friend Ralph Young if he did not want to drive the machine. At this request Young did drive the automobile. The school girl friend sat by his side on the front seat. Sengo and his boy friend sat on the rear seat. Lieutenant Wells testified that he had brought his company of militiamen to a halt on the northerly side of the pavement where they stood at attention, when suddenly, without warning, the defendant's machine came ''roaring down the street'' from their rear, at the rate of fifty miles an hour on the ''north side of the road'', and ''plowed through the company'', striking all of the men in rank except the most northerly file. ''It scattered men in all directions; they were thrown all over the road.'' Each of the plaintiffs was seriously injured as a result of the accident.

A separate suit for damages was brought by each of the plaintiffs. The causes were consolidated and tried by the court sitting without a jury. Judgment was rendered in each case against the defendants. From these judgments the defendants have appealed.

It is conceded there is sufficient evidence to sustain the findings that the accident occurred through the negligence of the driver of the automobile. It is not contended the several amounts which were awarded to the respective plaintiffs are excessive.

It is contended, however, that the plaintiffs were guilty of contributory negligence in occupying positions at the time of the accident on the northerly side of the concrete portion of the highway, contrary to the provisions of section 150½ of the California Vehicle Act and that Tony Sengo, the owner of the automobile is not liable for the negligent driving of the machine by Ralph Young for the reason that it was not then being operated with his consent.

There is ample evidence to support the findings that the plaintiffs were not guilty of contributory negligence in standing on the concrete portion of the highway contrary to the provisions of section 150½ of the California Vehicle Act, or otherwise. Section 150½ (now sec. 564 of the Vehicle Code) provides:

"It shall be unlawful for any pedestrian to *walk along and upon any highway* outside of a business or residence district otherwise than close to his left-hand edge of the highway."

The evidence fails to show facts from which it may be determined whether the accident occurred "outside of a business or residence district", as that phrase is defined in section 28½ of the California Vehicle Act, now sections 89 and 90 of the Vehicle Code. According to the definition of a highway found in section 21 of the California Vehicle Act we must assume Oak Street in Maxwell, where the accident occurred, is a public highway. The general rule in damage cases places the burden on the defendants to prove that the plaintiffs are guilty of contributory negligence. Under that rule these defendants would be required to affirmatively show that the accident occurred "outside of a business or residence district", to exempt them from liability. But the legislature has seen fit to shift the burden of proof to the plaintiffs in that particular regard. Section 28½, subdivision (c), of the California Vehicle Act (now sec. 758 of the Vehicle Code) provides:

"Every public highway shall be conclusively presumed to be outside of a business or residential district unless its

existence within a business or residential district shall be established by clear and competent evidence as to the nature of the district, and unless signposted when and as required by this act.''

The burden still remains on the defendants to affirmatively prove that the plaintiffs were actually walking ''along and upon'' the highway, to exempt them from damages under the provisions of section 150½ of the California Vehicle Act. This they have failed to do. On the contrary, the evidence in this case affirmatively shows that the plaintiffs, at the time of the accident, were actually standing still on the northern and proper side of the concrete portion of the highway. What the members of the militia may have been doing in that regard some time prior to the accident is immaterial. Even if the company had been previously marching along the highway, that fact in no way contributed to the accident. But we are pointed to no evidence which indicates that it had previously been marching along and upon the concrete portion of the highway, or at all. Assuming that the company had been previously drilling ''in the street'', this does not prove it was maneuvering on, across or upon the concrete. The street is 80 feet in width at the point where the accident occurred. The concrete portion of the street occupied but 18 feet along the center thereof. This left 31 feet of open space on either side of the concrete. If the militia had been previously drilling on this graveled portion of the street outside of the paved portion, it may not be said that fact contributed in any manner to the accident which occurred on the northerly side of the paved portion of the street.

The appellants' construction of section 150½ of the California Vehicle Act is a strained and unreasonable interpretation thereof. Clearly that section is intended to apply only to pedestrians who are engaged in walking along and upon that portion of a public highway upon which motor vehicles are accustomed to travel. Streets and highways are maintained for the use of pedestrians as well as for vehicles. If the appellants' construction of that section prevails then it would constitute negligence *per se* for any pedestrian parade or military company to march along a street or highway under any circumstances. That construction is absurd. Under such circumstances a military com-

pany could comply with the terms of that section only by walking in single file, Indian fashion, along the extreme left-hand border of a street or highway.

The question as to whether the plaintiffs as members of the state militia were actually walking along and upon the paved portion of the highway at the time of the accident was a problem of fact to be determined by the court. The court decided that they were not walking along or upon the highway at that time. There is substantial evidence to support that finding, and it will, therefore, not be interfered with on appeal.

The plaintiffs were regularly enlisted members of the state militia actually engaged in military maneuvers pursuant to law under the direct command of their superior officer in accordance with the provisions of the Military Code of California. (Stats. 1933, p. 2501, Deering's Sup. of 1933, p. 1844, Act 4885.) As members of the state militia the plaintiffs were bound to participate in company drills and maneuvers and to obey the lawful commands of their superior officers in accordance with the rules of discipline prescribed by the National Guard of the regular army of the United States. (32 U. S. C. A.; secs. 61 and 62.) This Military Code requires these members of the state militia to "assemble for drill and instructions . . . not less than forty-eight times in each year". (See sec. 167 of the California Military Code, *supra*.) The enlisted members of the state militia are bound to obey the lawful commands of their superior officers on penalty of being punished for insubordination, which is declared to be a misdemeanor. Section 164 of the Californa Military Code provides in that regard:

"Any officer or enlisted man of the National Guard or Naval Militia who wilfully. fails to attend any parade or encampment, or *who neglects or refuses to obey the lawful command of his superior officer* on any day of parade or encampment, or *who fails to perform such military duty as may be lawfully required of him*, or who uses disrespectful language toward his superior officer or commits any act of insubordination, is guilty of a misdemeanor."

These plaintiffs were under solemn oaths to obey the lawful orders of their superior officers, as provided by section 123 of the National Guard Act of the United States (32 U. S. C. A., sec. 123, *supra*.) That section provides in part:

"I do solemnly swear . . . that I will obey the orders . . . of the officers appointed over me according to law and the rules and Articles of War."

It is said that persons who are engaged in military service of the state or nation are not liable in a civil suit for damages for acts done in the course of their military duties in obedience to lawful orders of a superior officer. But if the orders are clearly or apparently illegal, or such as a person of common understanding, in the exercise of ordinary reason, should know are illegal and contrary to the express provisions of the civil law, the enlisted militamen will not be exempt from liability for damages resulting from the execution of such illegal orders. (18 R. C. L., p. 1082, sec. 75; 40 C. J., p. 707, sec. 120.)

It is true that, in time of peace, the military power is subordinate to civil law (art. I, sec. 12, Const. of Calif.) and that in time of peace it is no defense to a suit for damages resulting from a wilful or negligent act that it was performed in obedience to the unlawful command of a superior officer of a company belonging to the National Guard, when that order is known to the militaman, or by the exercise of reasonable care, should have been known to him to be unlawful. (*Bishop* v. *Vandercook,* 228 Mich. 299 [200 N. W. 278].) The rule announced does not apply in time of war, or when the militia acts in conformity with the mandate of the Governor of the state for the purpose of executing the laws of the state or to suppress insurrections or repel invasions. (Art. VIII, sec. 1, Const. of Calif.; *Sterling* v. *Constantin,* 287 U. S. 378, 395 [53 Sup. Ct. 190, 77 L. Ed. 375]; *Herlihy* v. *Donohue,* 52 Mont. 601 [161 Pac. 164, Ann. Cas. 1917C, 29, L. R. A. 1917B, 702].) But when it does not appear that the militiaman, in obedience to the command of his superior officer, has knowingly violated the law, or that as a reasonable person he should have known his act was contrary to law, the question of his contributory negligence becomes one of fact to be determined by the court or jury, the determination of which, in the absence of evidence to the contrary, will not be disturbed on appeal. (*Bishop* v. *Vandercook, supra.*)

██ In the present case it does not appear that the plaintiffs violated any statute in obeying the command of their superior officer, or in halting and standing in ranks, tem-

porarily, on their proper northern portion of the paved street. The command of the presiding officer of the militia to halt and stand at attention upon the proper portion of the concrete pavement was not in conflict with the provisions of section 150½ of the California Vehicle Act, and it was not unlawful.

The evidence adequately supports the finding that the automobile was being driven by Ralph Young at the time of the accident with the implied consent of the owner of the machine, and under his direction and control, which renders him liable for the negligent operation thereof. (Civ. Code, sec. 1714¼; *Haggard* v. *Frick*, 6 Cal. App. (2d) 392 [44 Pac. (2d) 447]; *Hughes* v. *Quackenbush*, 1 Cal. App. (2d) 349, 357 [37 Pac. (2d) 99]; *Pohle* v. *Bolinas Beach Realty Co.*, 130 Cal. App. 704 [20 Pac. (2d) 730]; *Sutton* v. *Tanger*, 115 Cal. App. 267 [1 Pac. (2d) 521].) It appears without conflict that the car was in the control of William Sengo, the minor son of Tony Sengo, who has signed the application of his son for an operator's license; that the father, who was unable to drive an automobile, had owned the car for several years and that he regularly permitted and expected his son to use the machine for any and all ordinary purposes, at will, without restrictions; that at the time of the accident the machine was in the actual control of the son, William Sengo, who rode in the back seat thereof in company with his boy friend, and who had requested Ralph Young to drive the car. William Sengo testified in that regard: "Q. . . . You asked Ralph Young to drive down town, did you not? A. . . . Yes, I asked him if he wanted to drive it." This evidence furnishes proof that the car was being operated by Young with the implied consent of the owner thereof, and, under the authorities last cited, this renders him liable for damages under the provisions of section 1714¼ of the Civil Code.

The defendants failed to sustain the burden placed upon them to affirmatively prove that the plaintiffs were walking along or upon the highway at the time of the accident, or that they were then guilty of the violation of any law.

The judgments are affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 28, 1936.