[S. F. No. 16866. In Bank. July 8, 1943.]

THERESA SOUZA et al., Appellants, v. JOHN CORTI et al., Defendants; JOSEPH GIGLI et al., Respondents.

Van A. Neher and Phillips & Munck for Appellants.

Myron Harris, William H. Older and John Jewett Earle for Respondents.

SHENK, J.—This is an action for damages for personal injuries resulting from an automobile collision. Judgment was entered in favor of each of the plaintiffs against the defendant John Corti and in favor of the defendants Joseph and Arthur Gigli, father and son. The plaintiffs appealed from the judgment in so far as it is favorable to the defendants Gigli.

The appeal involves the construction, as applied to the undisputed facts, of section 402 of the Vehicle Code, the pertinent part of which is as follows: "Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner. . . ."

Joseph Gigli was the owner of a Dodge sedan. He housed the car in the garage at his home where he and his family,

including Arthur and a younger son, resided. The keys were left in the car and members of the family were permitted to use it. The son Arthur conducted a service station at San Leandro. He had general permission to use his father's car and had used it on an average of twice a week for a year and a half. On the evening of Saturday, July 6, 1940, Arthur loaned his own car to the younger brother. At a later hour Arthur desired to go out with his friend, the defendant John Corti, so he sought and obtained permission from his father to use the Dodge car. The father testified that Arthur asked him for the use of the car on that evening and that he granted permission to use it but with the admonition: "Don't lend the car to anyone else." Arthur took the car and in company with Corti stopped at Rocca's, a liquor dispensing establishment and dance hall. From there the two proceeded to a night spot known as Bruno's where they met two girls with whom they had not theretofore been acquainted. Later they decided to return to Rocca's and dance. Arthur suggested that the four go in the Dodge car. Arthur's girl objected because she had a new Plymouth coupe with her and did not want to leave it behind. Neither did Arthur wish to leave his father's car. In order to get the two cars to Rocca's and to make sure the girls would show up, Arthur decided to ride with his girl in the Plymouth. Accordingly he handed the keys of the Dodge to Corti who agreed to take the other girl in that car and "follow" the Plymouth car to Rocca's. The collision in which the plaintiffs were injured occurred on the return trip to Rocca's when the Dodge car, driven by Corti, collided with the plaintiff's car at the intersection of East 14th Street and Dutton Avenue in San Leandro. The negligence and liability of Corti is not disputed. The principal question is whether Joseph Gigli, the owner of the Dodge car, is liable in damages for the injuries sustained by the plaintiffs pursuant to the statute above quoted. He contends that he is not liable because he had not given express permission to Corti to drive the car and that permission so to do may not be implied for the reason that he instructed his son Arthur not to lend the car to anyone else.

The portion of the statute now under consideration was enacted in 1929 and was then included in section 1714¼ of the Civil Code (Stats. 1929, p. 566). Its constitutionality is not questioned. (See *Sutton* v. *Tanger*, 115 Cal.App. 267 [1

P.2d 521], *O'Neill* v. *Williams,* 127 Cal.App. 385 [15 P.2d 879].) ■ The statute defines the owner's liability in cases where the principle of *respondeat superior* is inapplicable, in order to make him liable for the negligence of any person to whom he had expressly or impliedly given permission to operate his car, and thereby prevent him from escaping liability by saying that his car was being used without express authority or not in his business. *(Bayless* v. *Mull,* 50 Cal.App.2d 66 [122 P.2d 608] ; *Plaumbo* v. *Ryan,* 213 App. Div. 517 [210 N.Y.S. 225].)

By a New York statute adopted in 1924 (New York Highway Law, 1924, ch. 534, sec. 282-e) liability was imposed on the owner similar to that prescribed by section 402 of our Vehicle Code. In *Feitelberg* v. *Matuson,* 124 Misc. 595 [208 N. Y. S. 786], the defendant owner permitted one Mishkin to use his car. The accident occurred while Mishkin and some of his friends occupied the car. The driver was not Mishkin but one of his party. After upholding the constitutionality of the statute the court said: ''The defendant also claims that the plaintiff cannot recover for the reason that the person to whom the car was loaned did not drive the car. The statute says, however, that the owner should be liable for the acts of any person legally 'using or operating the same.' The words are used disjunctively. The legislature drew a distinction between 'using' and 'operating.' To operate, as distinguished from use, signifies a personal act in working the mechanism of the car *(Witherstine* v. *Employers' Liability Assurance Corporation,* 235 N.Y. 168, 172 [139 N.E. 229, 28 A.L.R. 1298].) As there stated: 'The driver operates the car for the owner, but the owner does not operate the car unless he drives it himself.' What was the purpose of adding the word 'use' unless it was meant to include the person who had the actual, though not physical, control of the car, and who was constituted by the owner its master ad hoc. If the liability of the owner were limited to the acts of the operator, the statute would become a dead letter in most cases. Its evasion would be an easy matter. The statute must be interpreted in accordance with its verbiage. We cannot hold that 'using' and 'operating' are interchangeable or synonymous words. If the owner chooses to intrust his car to another person, he invests such person so long as he uses the car, with the same authority in regard to the management of the car

which the owner has. That authority includes the right to select the operator. The statute so provides in unmistakable language.'' The court in that case also said: ''Of course, the liability of the owner ceases, when the borrower, in turn, gives the use of the car to a third party without the owner's consent.'' That statement was obiter, and in making it the court was merely emphasizing the distinction, under the New York law, between use and operation.

In *Grant* v. *Knepper*, 245 N.Y. 158 [156 N.E. 650, 54 A.L.R. 845], Carucci, an employee of the defendant owner, was in charge of a truck as driver, accompanied by a salesman. He permitted the salesman, who was neither experienced, competent nor licensed as a driver, to operate the vehicle, while the driver rode on the running board. An accident occurred resulting in damage to the car of a third party. The defendant owner was held liable, first, on the common law liability for the negligence of the owner's authorized representative. On a second ground the court, speaking through Cardozo, then Chief Judge, said at page 164: ''Passing from common law to statute, we find the owner's liability not merely continued, but extended. By Highway Law (sec. 282-e) 'Every owner of a motor vehicle operated upon a public highway shall be liable and responsible for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner.' 'Use' as well as 'operation' may thus fasten liability upon the owner under the provisions of the statute (*Fluegel* v. *Coudert*, 244 N.Y. 393 [155 N.E. 683]). This truck was intrusted by the defendant to Carucci, his driver, to be 'used' in the transportation of persons and property to and from a stated point. It was in use for that purpose and no other when the accident occurred. The defendant expected, to be sure, that Carucci would operate the truck as well as use it. None the less, use without more would entail liability for negligence. The statute may be said in a general way to have brought about the same results as had been attained in some other jurisdictions without reference to any statute by the so-called doctrine of 'the family automobile' (*Fluegel* v. *Coudert, supra; Ferris* v. *Sterling*, 214 N.Y. 249 [108 N.E. 406, Ann.Cas. 1916D, 1161], at p. 252). Only a narrow construction would permit us now to say that an owner placing a car in the care of members of his

family to be used for their pleasure or for the family business would escape liability if wife or son or daughter should give over the wheel to the management of a friend. The ruling has been more liberal whenever the question has come up (*Kayser* v. *Van Nest*, 125 Minn. 277 [146 N.W. 1091, 51 L.R.A.N.S. 970]; *Thixton* v. *Palmer*, 210 Ky. 838 [276 S.W. 971, 44 A.L.R. 1379]; *Ulman* v. *Lindeman*, 44 N.D. 36, 41 [176 N.W. 25, 10 A.L.R. 1440]). Carucci did not abandon the car or its use when he surrendered to another the guidance of the wheel. He was still in charge of the truck, and was using it with the permission of the master, and even in the master's business. He did not cease to use it, and use it with permission, though the method of operation may have been illegal or forbidden. We think the effect of the statute is to read into our law the rule of liability laid down in *Geiss* v. *Twin City Taxicab Co.*, (120 Minn. 368 [139 N.W. 611, 45 L.R.A.N.S. 382]). The owner is now liable, though the negligence of the substitute may have been 'sudden and unexpected' (*Ricketts* v. *Tilling*, *supra*) if the act of negligence occurs during the life of the permitted use. Carucci was delinquent, but he was still the director of the enterprise, still the custodian of the instrumentality confided to his keeping, still the master of the ship.''

A law similar to the New York statute and to our own has been in effect in Michigan since 1915. A proviso contained therein ''that the owner shall not be liable unless said motor vehicle is being driven by the express or implied consent or knowledge of such owner,'' has been upheld and construed in harmony with our present conclusion. (*Kerns* v. *Lewis*, 246 Mich. 423 [224 N.W. 647]; see also *Kieszkowski* v. *Odlewany*, 280 Mich. 388 [273 N.W. 741].) The court in the case of *Kerns* v. *Lewis* declined to read into the statute the restriction that the particular driver must be known by and his driving consented to by the owner. In *Hawkins* v. *Ermatinger*, 211 Mich. 578 [179 N.W. 249], the provision of a statute declaring that the consent of the owner of a car to its use will be conclusively presumed when the same is driven by an immediate member of his family was held constitutional as within the police power of the state.

In the absence of statutory liability in the State of Washington the courts have adopted the ''family use'' doctrine to hold the parent responsible when a third person was driving even though the parent gave specific instructions that the

third person should not drive the car. (*King* v. *Cann,* 184 Wash. 554 [52 P.2d 900].)

The courts of this state have not recognized the distinction made in such cases as *Owen* v. *Gruntz,* 216 App.Div. 19 [214 N.Y.S. 543], and *Stapleton* v. *Hertz Drivurself Stations Inc.,* 131 Misc.R. 52 [225 N.Y.S. 661], where the car was turned over to a third person by the permittee. In the case of *Haggard* v. *Frick,* 6 Cal.App.2d 392 [44 P.2d 447], the defendant gave the use of a car to his son who was attending university, with the instruction not to permit anyone else to drive it. The son violated the instruction, and permitted another student to take the car and drive it for his own purposes. An accident occurred while the car was so being driven. The District Court of Appeal relied on several cases in this and other jurisdictions, including *Grant* v. *Knepper, supra,* in arriving at the conclusion that an owner is liable for the negligence of a person to whom his permittee has entrusted the automobile temporarily.

In *Bayless* v. *Mull,* 50 Cal.App.2d 66 [122 P.2d 608], in a discussion of the general principles, it was said at page 72, "that the legislature did not intend by the language it used to permit an owner to show any and all restrictions he may have placed on the use of his car and thus escape liability." And again on page 75 the view of many courts was stated to the effect that "as the owner can avoid the liability by refusing to permit the use of his motor car by another or procure insurance to protect him, he should not be permitted to avoid the consequences of the operator's negligence and escape liability therefor by secret restrictions limiting the right to use the motor vehicle."

The cases of *Boland* v. *Gosser,* 5 Cal.App.2d 700 [43 P.2d 559], and *Howland* v. *Doyle,* 6 Cal.App.2d 311 [44 P.2d 453], involved third party drivers, and the owner was held not liable. But in each of those cases the permittee was not given the general use of the vehicle. He had the car or truck to make certain repairs or tests, but turned it over to another for the purpose under circumstances which indicated that such delegation was not contemplated by the owner. However, if it may be said that there is anything stated in those cases which is not in harmony with the views expressed herein, it is necessarily disapproved.

In the present case the use which was being made of the borrowed car at the time of the accident was the use which was contemplated by the owner. Any secret restrictions im-

posed by him on the manner of its use do not negative the controlling fact that it was being used with the owner's permission at the time of the accident. Violations of such restrictions may not be said to cause a revocation of the permission. Liability of the defendant owner in this case pursuant to section 402 of the Vehicle Code is therefore established. Cases such as *Engstrom* v. *Auburn Auto Sales Corp.*, 11 Cal.2d 64 [77 P.2d 1059], *Henrietta* v. *Evans,* 10 Cal.2d 526 [75 P.2d 1051], and *Di Rebaylio* v. *Herndon,* 6 Cal.App.2d 567 [44 P. 2d 581], were concerned with violations of restrictions placed on the borrower as to the purpose for and the time within which the car was to be used. Further consideration need not now be given to those cases for the reason that we have here no question concerning the use of the car for the purpose or the period for which it was borrowed.

As to the liability of the defendant Arthur Gigli, the record shows that defendant Corti took possession of the Dodge car for the use, benefit and accommodation and under the direction of Arthur and for the purpose of taking it to Rocca's for Arthur. Under these circumstances Arthur was the principal and Corti was his agent. The negligence of the latter was therefore imputable to Arthur. (*Maberto* v. *Wolfe,* 106 Cal.App. 202 [289 P. 218].)

The judgment in favor of the defendants Gigli is reversed.

Gibson, C. J., Curtis, J., and Carter, J., concurred.

SCHAUER, J.—I concur in the judgment of reversal as to both Joseph Gigli and Arthur Gigli. In my opinion the evidence fails to support the finding that John Corti, in the operation of the automobile, was not the agent of Arthur Gigli. If John Corti was operating the car as the agent of Arthur Gigli, then the *use* of the car was that of Arthur Gigli. Regardless of the asserted admonition by Joseph Gigli (the father) to Arthur (his son) not to permit anyone else to *drive* it, he did consent to its *use* by Arthur. The situation is substantially the same as though the father had admonished the son not to operate the vehicle negligently. As Arthur was "using" the car at the time of the accident, its use was within the consent given by the father, even though Arthur had disobeyed his father's instruction not to permit another to operate it.

If Arthur had assumed to loan the vehicle to John for John's personal usage, as distinguished from that of Arthur,

we should have a different question, for which I suggest no answer here.

When a person to whom an automobile has been entrusted embezzles it, and converts it to his own use in derogation of the title of the owner, I think the owner should not be held fictionally to have consented to usage which he did not in fact consent to, either expressly or impliedly. But when the usage which the bailee makes of a borrowed vehicle does not amount to a conversion of it, his mere disobedience of admonitions as to his personal conduct in the operation of the automobile within the scope of the authorized use should not exculpate the owner from the liability otherwise imposed by the statute.

In this case, Joseph Gigli consented to the use of the car by his son, and such consent covered the time and place in question. The father, therefore, is liable for negligence in its operation *while it was being so used* even though he had forbidden his son to allow another to operate it and his son had disobeyed such instruction. In the eyes of the law, by reason of the agency relationship, *John Corti's operation* of the automobile was *Arthur Gigli's use* of it. The consent of Joseph Gigli to such *use* (that is, use by Arthur) is all that is necessary to fasten liability upon him for negligence in its operation. As long as the vehicle was being *used* by Arthur, whether personally or through his agent, Joseph cannot avoid responsibility for negligence in its operation.

TRAYNOR, J., dissenting and concurring.—Under section 402 of the Vehicle Code the owner of a motor vehicle is not liable for an injury resulting from the negligence of another unless the latter was using or operating the vehicle with the express or implied permission of the owner when the injury occurred. It is settled that the owner does not become liable under this section merely by entrusting control of the vehicle to another, for if he qualifies his permission by specifying that the vehicle is to be used for a limited time, for a particular purpose, or in a particular locality, and such limitations are substantially violated, the permission terminates. (*Henrietta* v. *Evans,* 10 Cal. 2d 526 [75 P.2d 1051] ; *Engstrom* v. *Auburn Auto Sales Corp.,* 11 Cal.2d 64 [77 P.2d 1059] ; see 61 A.L.R. 866 ; 83 A.L.R. 878 ; 112 A.L.R. 416 ; 136 A.L.R. 481.) When the owner grants permission, however, he cannot insure its termination upon the occurrence of an injury and thus defeat the purpose of the statute, by specifying that the vehicle is not to

be used in a manner that could lead to injuries. It would be an obvious circumvention of the statute if permission could terminate upon violation of a general instruction that the vehicle was not to be operated negligently or in any manner that would violate the Vehicle Code. It would be just as much a circumvention if the owner gave permission to use the vehicle subject to particular restrictions that would free him from the risks of injury that normally attend use of a motor vehicle.

There is no circumvention of the statute, however, when an owner imposes restrictions to protect himself against undue risks, as when he restricts the use of the vehicle to certain times, places, or purposes. The object of such qualifications is to limit the use of the vehicle, not to free the owner from the risks that attend its use. The same object motivates the qualification that the one who receives permission to use a vehicle must not allow any one else to use it. It is more likely that this qualification would be made than any other, for an owner would hardly accord the privilege of using the vehicle except to someone in whom he had confidence. When he takes the precaution to restrict the privilege to a single person, he refuses his consent to the use of the vehicle by others and cannot properly be regarded as liable for injuries that might result from such a use under a statute that predicates the owner's liability on his consent to the use or operation of the vehicle. A qualification that forbids the operation of the vehicle by others also restricts the use of the vehicle by the person entrusted with it. He is precluded not only from lending the vehicle to anyone else, but from using it in any way himself that would involve its operation by another except as compelled by emergencies or the exigencies that arise in the normal use of a motor vehicle. Thus in the present case, the owner's qualification applied not only to Corti's use of the vehicle to transport himself and the girl that accompanied him to Rocca's but to Arthur Gigli's use of it by thus having it brought to him at Rocca's. I therefore dissent from the judgment of reversal as to the owner, Joseph Gigli.

I concur in the judgment of reversal as to Arthur Gigli. There is no conflict in the evidence that while Corti used the vehicle for his own purposes, he operated it at the same time on behalf of Arthur Gigli in getting the vehicle to Rocca's for him. He was thus Arthur Gigli's agent regardless of the accomplishment of his own purposes. (*Brimberry* v. *Dudfield*

*Lumber Co.*, 183 Cal. 454, 462 [191 P. 894] ; *Ryan* v. *Farrell*, 208 Cal. 200, 204 [280 P. 945] ; see Restatement, Agency, sec. 236, California Annotations—171; Mechem on Agency (2d ed.) sec. 1895.)

EDMONDS, J., dissenting.—I can see no basis recognized in law for enlarging the vicarious liability of an automobile owner to the extent stated by my associates. In my opinion, they have adopted a construction of section 402 of the Vehicle Code which ignores its express language and is directly contrary to all former decisions of the California appellate courts. The conclusion now reached not only changes the rule as to the owner in the present case, but also, in effect, imposes a retroactive liability upon the respondents and other persons who have loaned their automobiles in reliance upon the former interpretation of the statute. And even more startling is the reversal of a judgment based upon findings of fact which, in turn, are supported by substantial evidence.

Indeed, the essential facts are not disputed. It appears that for the preceding 18 months, Joseph Gigli had loaned his Dodge sedan to his son on an average of twice each week, and when left in the garage at their home, the keys were not taken out of it. On the evening the accident occurred, Arthur asked his father to allow him to use the automobile. The father gave his consent, but, according to his testimony, told Arthur "not to loan the car to nobody else." He also said he had directed Arthur "Not to leave anybody else use it" and to "Let nobody else drive it." These answers followed the form of the questions. But on cross-examination he was asked whether all that concerned him was "that he didn't lend the car to somebody else," "No it is not," was the reply. "What were you concerned with?" counsel continued. Mr. Gigli answered: "Leave nobody drive it." This was followed by the question : "Which is true, that you told him not to lend the car to somebody else and nothing else, or that you told him more than that?" Mr. Gigli replied : "I told him not to leave anybody else drive the car."

Following this conversation, Arthur took the automobile and with his friend, John Corti, went to Bruno's Inn, where they made the acquaintance of two girls. The four subsequently agreed to go to Rocca's Inn, another roadhouse, to dance. Arthur suggested that they go in his father's sedan,

but his newly-found companion objected upon the ground that she did not want to leave her new Plymouth coupe at Bruno's. Arthur objected to leaving his father's car there. Corti then asked Arthur to give him the keys to the Dodge, saying that he and the other girl would follow the coupe to Rocca's. Arthur consented and rode with his girl in her Plymouth. The accident occurred on the way to Rocca's.

The trial court found that the accident was caused solely by the negligence of Corti, but that he was, at the time of the accident, operating the automobile without the knowledge and without the permission, express or implied, of its owner, Joseph Gigli. In addition, the court found that "at the time and place of the collision . . . John Corti was not acting as the agent, servant or employee of either or both of the defendants Arthur Gigli and Joseph Gigli."

In considering the legal position of Joseph Gigli as the owner of the automobile, it is necessary first to determine the nature of the express condition which he imposed when he loaned the car. The only restriction placed upon the use of the car, assert the appellants, was, according to the father's testimony, "not to loan the car to nobody else." And the son, they insist, did not *loan* the car to anyone else but allowed John Corti, to drive it for his benefit and accommodation. Assuming, however, that some of the evidence affords a basis for such a distinction, other testimony amply supports the trial court's conclusion as to the terms of the loan. Considering the entire record, it clearly appears to have been Joseph Gigli's intention that Arthur should allow no one else to drive the car, a condition which Arthur fully understood.

By the terms of section 402 of the Vehicle Code, "Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner. . . ." There is no ambiguity in these words; the owner is liable only if the injury was occasioned by the negligent operation of the person who is using or operating the motor vehicle with the permission of the owner. And the courts of California and of other states in considering this statute and similar legislation, have uniformly held that, when an owner allows another to use his car but limits the use of the vehicle by the permittee,

the latter is not "using or operating the same with the permission, express or implied, of such owner" when he exceeds those limitations. (See, in general, annotations in 135 A.L.R. 481, 486-490; 112 A.L.R. 416, 421-424; 83 A.L.R. 878, 881-883; 61 A.L.R. 866, 872, 873.) Thus, in California, the courts have, without exception, upheld restrictions upon the time, place or purpose of the permittee's use, and as to who may drive the automobile. (Time: *Engstrom v. Auburn Auto Sales Corp.,* 11 Cal.2d 64 [77 P.2d 1059]; *Di Rebaylio* v. *Herndon,* 6 Cal.App.2d 567 [44 P.2d 581]. Place or purpose: *Henrietta* v. *Evans,* 10 Cal.2d 526 [75 P.2d 1051]; *cf.* reasonable deviation from place of operation where no express restriction as to locality in *Bayless* v. *Mull,* 50 Cal.App.2d 66 [122 P.2d 608]. Person: *Bradford* v. *Sargent,* 135 Cal.App. 324, 326 [27 P.2d 93]; *Boland* v. *Gosser,* 5 Cal.App.2d 700 [43 P.2d 559]; *Howland* v. *Doyle,* 6 Cal.App.2d 311 [44 P.2d 453]; *Helmuth* v. *Frame,* 46 Cal.App.2d 381 [115 P.2d 852].)

Assuming that, as stated in the majority and concurring opinions, the trier of facts acted unreasonably in concluding that Corti was not driving the car as the agent of Arthur Gigli, although the use of the car at the time of the accident may have been the use of Arthur, the question still remains, under the statute, whether that use by Arthur is a permitted one. For, as pointed out by this court very recently: "The fact of permisison is just as important as is the fact of ownership. If either is absent the statute does not operate." (*Krum* v. *Malloy, ante,* pp. 132, 134 [137 P.2d 18].)

It has been held that where the owner gives his express permission for the use of the car for a certain purpose without restriction as to who is to operate it in order to effect that purpose, the authority of the permittee may impliedly include the right to select the operator to carry out the permitted use (*Haggard* v. *Frick,* 6 Cal.App.2d 392 [44 P.2d 447]; *Pohle* v. *Bolinas Beach R. Co.,* 130 Cal.App. 704 [20 P.2d 730]; *Sutton* v. *Tanger,* 115 Cal.App. 267 [1 P.2d 521]), although the circumstances may be such as to negative such authority (*Howland* v. *Doyle, supra;* and see *Engstrom* v. *Auburn Auto Sales Corp., supra;* see annotations in 112 A.L.R. 416, 424, 425; 83 A.L.R. 878, 884; 61 A.L.R. 866, 873-875). But, obviously, an expressed intention always supplants an implied one (*Tanner* v. *Title Ins. & Trust Co.,* 20 Cal.2d 814, 824 [129 P.2d 383]; *Jones* v. *Interstate Oil Corp.,* 115 Cal.App. 302 [1 P.2d 1051];

*Cliffe Co.* v. *Du Pont Eng. Co.,* 298 F. 649, 651; and see 5 Williston on Contracts [rev. ed. 1937], sec. 1293 n. 1, p. 3682), and for that reason consent may not be implied when it is expressly withheld.

The factors required for a finding of either express permission or of implied consent have been stated in many cases. One of these is *Bradford* v. *Sargent, supra,* which presented the same question as is now before the court. It was there shown that the owner of the car causing injury had instructed his son that no one other than a specified person should be allowed to drive it. The son allowed another boy to drive the automobile and an accident resulted. A judgment against the owner was reversed. In determining that no permission contemplated by the statute had been given, the court said: ''Express permission would necessarily include prior knowledge of the intended use and an affirmative and active consent to it. An implied consent would indicate a sufferance of use or a passive permission deduced from a failure to object to a known past, present or intended future use under circumstances where the use should be anticipated. Knowledge of some act or intended act on the part of the user by the owner should be necessary before consent to use should be implied.'' This decision, directly in point, is not discussed in either the concurring opinion or that of the majority, although this court denied a petition for hearing.

And compare the conclusions upon which the judgment in the present case is reversed with *Howland* v. *Doyle, supra,* p. 315, where the District Court of Appeal held: ''Permission to drive a motor vehicle, implied as well as express, such as is necessary to bring the case within section 1714¼ [the predecessor of the statute now being considered], can only exist when the owner had knowledge or at least reason for believing that the vehicle would be driven by the person with whose negligence it is sought to charge him.'' Again a petition for hearing was denied by this court. It also denied a petition for hearing after the decision in *Boland* v. *Gosser, supra.* And both *Howland* v. *Doyle* and *Bradford* v. *Sargent* were expressly approved by this court in *Engstrom* v. *Auburn Auto Sales Corp., supra,* and *Henrietta* v. *Evans, supra.* The majority opinion, in attempting to distinguish *Boland* v. *Gosser, supra,* and *Howland* v. *Doyle,* from the present case says that, in those cases, the permittee ''had the car or truck to make

certain repairs or tests, but turned it over to another *for the purpose* under circumstances which indicated that such delegation was not contemplated by the owner." (Italics added.) But how may it be said that the delegation to Corti was contemplated by the owner when Joseph Gigli had expressly forbidden any such delegation, and it is an uncontradicted fact that Arthur Gigli had never before allowed another to drive his father's car?

The majority opinion also declares that in the case of *Haggard* v. *Frick, supra,* the owner of an automobile was held liable although his son violated the father's instruction not to permit anyone else to drive it. But in that case it appears that the father merely expressed the wish to his son that he "would rather he would not let any other person drive" the car. In holding Frick, the owner, liable the court pointed out that he had "delivered the car to his son without direction or restriction as to its use other than the expressed wish that he would not let anyone else drive it. It was given, however, with the intention and understanding that the son should have the exclusive use and control of the car throughout the college year, at a place more than four hundred miles from appellant's home." Such precatory words do not constitute a limitation upon the authority of the permittee and the decision is simply one in accord with the rule which places within the authority of a permittee without restriction the right to select an operator to drive the car, with consequent liability upon the owner for negligent operation within the field of the permitted use. Yet this is the sole authority, so far as the cases in this state are concerned, upon which a majority of the court relies for a reversal of the judgment in the present case. And, in quoting from the case of *Bayless* v. *Mull, supra,* their opinion ignores the fact that "there were no express restrictions or limitations" concerning the use of the automobile which caused injury and the court placed its decision upon that ground.

No logical distinction may be made between restrictions upon the purpose, time or place for which an automobile may be used and a limitation upon who may drive it. Indeed, the owner of an automobile may be principally concerned about the operator, for the skill and driving habits of a proposed borrower are usually of much more importance in determining whether one should be entrusted with an automobile than the

length of time for or the purpose of the proposed use. Yet in considering a restriction upon time, ". . . it is undisputed," said this court in the Engstrom case "that the only permission given Herndon to use the car was that he might have it for a particularly specified period. The accident happened a day after this time expired. To hold that Herndon was then driving the car with either the express or implied consent of the owner would require us to disregard the plain agreement of the parties." The facts of the present case are much more compelling in favor of the owner, for the undisputed evidence is that at no time did he give permission to Corti to use the car, and permission certainly may not be implied when he gave positive instructions to the contrary.

The record in *Henrietta* v. *Evans,* 10 Cal.2d 526 [75 P.2d 1051], showed "a case of an original permission for a limited use, the scope of which was exceeded; and the question is whether the original express consent terminated prior to the accident by reason of the violation of the limitation." The owners entrusted their automobile to one Evans for the sole purpose of driving the car to Beaumont to consummate its sale there. Evans, however, continued on through Beaumont to Colton, where the collision occurred. "There is no evidence," said the court, "to show authorization to use the car for any other purpose or to drive it to any other place; on the contrary, the only testimony in the record is to the effect that any other use was expressly prohibited. . . . The cases uniformly hold that where the permission is granted for a limited *time,* any use after the expiration of the period is without consent, and the owner is not liable, unless the circumstances justify an inference of implied consent to further use. . . . On principle, there is no fundamental ground of distinction between a limitation of time and one of purpose or place, in so far as permission is concerned; and it would seem clear that a substantial violation of either limitation terminates the original express consent and makes the subsequent use without permission." The owners were held not liable.

Nor do the cases from other jurisdictions, cited in the majority opinion, support the conclusions there reached. Following the rule adopted in California, they hold that consent to the use or operation of the motor vehicle by one person, may, in the absence of any express restriction as to the operator, include consent to the operation of the car for the permitted

use by another. This is all that was decided in *Feitelberg* v. *Matuson*, 124 Misc. 595 [208 N.Y.S. 786], but, the court added, "Of course, the liability of the owner ceases, when the borrower, in turn, gives the use of the car to a third party without the owner's consent." Also the facts stated in *Grant* v. *Knepper*, 245 N.Y. 158 [156 N.E. 650, 54 A.L.R. 845], clearly show that there was no express restriction by the owner of the truck upon the method of operation of the vehicle. As the court there said, although the driver had surrendered to another the guidance of the wheel, he remained on the truck and "was still the director of the enterprise, still the custodian of the instrumentality confided to his keeping, still the master of the ship."

In the case of *Stapleton* v. *Hertz Drivurself Stations*, 129 Misc. 772 [222 N.Y.S. 579], strongly relied upon by the appellants, the trial court held an owner liable although his permittee had signed a lease by the terms of which he expressly agreed not to allow or permit any other person to operate the automobile. In violation of the covenant, he allowed another to drive the automobile, through whose negligence the accident occurred. Upon appeal, the judgment was reversed, the court holding that the use by a third person was not authorized by the owner. (*Stapleton* v. *Hertz Drivurself Stations*, 131 Misc. 52 [225 N.Y.S. 661]; accord: *Owen* v. *Gruntz*, 216 App.Div. 19 [214 N.Y.S. 543].)

In *Kerns* v. *Lewis*, 246 Mich. 423 [224 N.W. 647], no express limitation was imposed by the owner of the vehicle as to who should drive it. But that case is not authority upon the question of the owner Corti's liability for a more fundamental reason. Unlike the California legislation which imposes liability for the negligent operation of a motor vehicle "by any person using or operating the same with the permission, express or implied, of such owner," the Michigan law makes the owner liable if the "motor vehicle is being driven by the express or implied consent or knowledge of such owner." In commenting upon this provision, the court said (p. 425): "Does the essential consent mentioned in the statute relate to the *driver*, or to the vehicle, 'being driven'? The statute makes the owner liable if the 'motor vehicle is being driven with his or her express or implied consent or knowledge,' and we cannot read into it the restriction that the particular driver must be known by and his driving consented

to by the owner. The statute may be drastic, but we cannot render it less so by any permissible construction.''

The only case from a foreign jurisdiction, cited by the appellants or by the majority opinion, in which any express restriction upon the person who might drive was imposed by the owner is *King* v. *Cann*, 184 Wash. 554 [52 P.2d 900]. In that case, the court observed, ''There was also some testimony to the effect that Mrs. Cann had told young Holt [the driver of the car at the time of the accident] that she 'would prefer that he did not drive the car.' '' Thus the case is very similar to that of *Haggard* v. *Frick*, 6 Cal.App.2d 392 [44 P.2d 447], where the father merely expressed the wish to his son that he ''would rather he would not let any other person drive'' the car. In addition, however, liability in the King case was predicated, not upon any such statute as is here involved, but in accordance with the doctrine of *respondeat superior*. In the words of the Washington court, ''When a member of the family has permission to use the car from the parents, as owners, in so unrestricted a manner as in the instant case, they must be held liable under the principle of agency, or *respondeat superior*, even though the member of the family turned the driving of the car over to another who proved incompetent or negligent.''

And I can see no reasonable basis for characterizing the limited permission given by the owner of an automobile in connection with its use ''secret restrictions.'' To hold that an owner may not qualify his permission and restrict it to a specified use of his automobile, modifies the statute in an important particular and makes him liable for consequences regardless of the terms imposed by him and accepted by the borrower of the automobile. It also takes from the trier of fact the right to determine whether, under the particular circumstances shown, the negligent driver was operating the automobile at the time of the accident with the permission, express or implied, of the owner.

The argument of the majority opinion against the recognition of what are termed ''secret'' restrictions upon the use of a motor vehicle (see *Bayless* v. *Mull, supra*, p. 72), as I view the matter, is based upon a misconception of the liability established by section 402 of the Vehicle Code. One is not bound by ''secret'' restrictions when he has been induced to act through reliance upon the apparent or ostensible authority

with which a principal has clothed his agent. (See Civ. Code, sec. 2334.) But, obviously, an injured plaintiff did not allow the accident to occur through reliance upon the fact that the negligently operated vehicle was being used with rather than without the permission of the owner. And, in any event, the victim is not informed by the operation of an automobile, whether it is being driven by a permittee or a thief. Moreover, a limitation upon the purpose or extent of the permitted use is just as "secret" as is a restriction upon the person who may drive the car.

Much of the confusion in the consideration of the question of restrictive use under such statutes as section 402 of the Vehicle Code, and the classification of some restrictions as "secret" or "unreasonable," undoubtedly has arisen through the reluctance of the courts to recognize such limitations as those upon excessive speed or careless driving. But the wording of the statute, which makes the owner responsible for the "negligence in operation" of his motor vehicle, affords a more satisfactory basis for the exclusion of restrictions upon the manner of driving than a judicially created one dependent upon what a particular court may deem reasonable. For the Legislature has taken from the owner the right to limit the extent of his permission under the statute to a non-negligent operation by express restrictions upon his permittee to drive only in a safe, careful, or lawful manner. So long, therefore, as the owner, either expressly or impliedly, has consented to the purpose and extent to which the car may be used and its operation by the person who is driving at the time of the accident, he is responsible for the negligence of that driver occurring while the car is being operated within such prescribed limits, regardless of any directions as to the manner of operation.

Also, in my judgment, the majority and concurring opinions have unduly extended the meaning of the word "operation" as used in the statute. In order to impose liability upon Joseph Gigli, the negligent "operation" must have been that of Arthur, as he was "the person using or operating" the car with the qualified permission of the owner. The word "operation," although broadly construed to hold that the permittee may be operating the car although not at the wheel so long as he remains in the car and retains supervision and control over the manner of driving, has not been extended to include

a situation where the permittee is no longer in the car and therefore not in a position to "direct or superintend" the operation of the vehicle. (See *Hicks* v. *Reis*, 21 Cal.2d 654, 659 [134 P.2d 788]; *Armstrong* v. *Sengo*, 17 Cal.App.2d 300 [61 P.2d 1188]; *Sutton* v. *Tanger*, 115 Cal.App. 267 [1 P.2d 521]; *Grant* v. *Knepper*, 245 N.Y. 158 [156 N.E. 650, 54 A.L.R. 845]; *Feitelberg* v. *Matuson*, 124 Misc. 595 [208 N.Y.S. 786]; *Owen* v. *Gruntz*, 216 App.Div. 19 [214 N.Y.S. 543]; *Stapleton* v. *Hertz Drivurself Stations Inc.*, 131 Misc. 52 [225 N.Y.S. 661].) It is therefore clear that under the rule of these decisions, the "negligence in the operation" of the Gigli machine was not that of Arthur, who was riding in another automobile.

In the foregoing discussion, I have assumed the correctness of the conclusion in the majority and concurring opinions that no evidence, or inference from the evidence, justified the trial court in finding that Corti was not the agent of Arthur Gigli at the time of the accident. As I read the record, it would support a conclusion by the trial court that the agency relation existed, in view of the fact that Arthur did not want to leave his father's car behind and also because he and Corti had decided that one of them should ride with the girls, as otherwise they might not "show up" at Rocca's. But, the testimony shows, it was Corti's suggestion that he drive the car. He was very insistent in his demand for it, and wished to use it as a means of transportation for his girl and himself. Certainly this evidence is entirely consistent with the finding of the trial court that Corti, at the time of the accident, was not driving the Dodge car as the agent of either the father or the son.

Section 402 of the Vehicle Code imposes a liability upon the owner which did not exist at common law. It may be said with much reason that, in the interests of public policy, the owner of an automobile should be responsible for its negligent use regardless of who may be operating it at the time of the injury. But that is a matter for legislative and not judicial concern, and the statute here in controversy imposes liability only when the vehicle is being operated at the time of the accident with the consent of the owner. Whether in a given case the driver at fault had such permission is a question of fact. The trier of fact is not bound to believe the testimony of an owner as to the restrictions imposed by him upon the use

of his car by the permittee, even though it be uncontradicted (*Prickett* v. *Whapples,* 10 Cal.App.2d 701, 703-705 [52 P.2d 972]), and many times this court has affirmed judgments in favor of the plaintiffs upon testimony as meagre as that which supports the court's findings in the present case. (*Hicks* v. *Reis,* 21 Cal.2d 654 [134 P.2d 788]; *Blank* v. *Coffin,* 20 Cal.2d 457 [126 P.2d 868].) The application of the rule announced in those cases that any reasonable doubt should be resolved in favor of the conclusion by the trier of fact should not be limited to but one party to an action under that statute and, in my opinion, compels agreement with the finding that Corti was not the agent of Arthur Gigli. Of course, if Corti was not the agent of Arthur, then obviously the former's use of the car at the time of the accident was not Arthur's use, and the entire structure upon which the majority and concurring opinions are predicated collapses, as under no theory of construction, could Corti's use then be said to be the one to which Joseph Gigli had consented.

For these reasons I believe that the judgment should be affirmed as to both Joseph Gigli and Arthur Gigli.