[Civ. No. 5064.   Third Appellate District.—October 11, 1934.]

GEORGE SANFORD et al., Respondents, v. CHARLES S. GRADY et al., Appellants.

George R. Freeman for Appellants Grady.

Clark & Heafey, Chenoweth & Leininger and James W. Hughes for Appellants Steger.

Jesse E. Nichols and Clifton Hildebrand for Respondents.

THOMPSON, J.—Separate appeals are prosecuted in this case from a joint judgment which was recovered pursuant to the verdict of a jury in an automobile casualty case against

the respective owners and operators of two different machines, in one of which the plaintiffs' intestate was riding as a guest. It was assumed the drivers of the vehicles were implicated in concurrent negligence and wilful misconduct which resulted in the death of the guest.

Mrs. Edith Sanford, a widow, was visiting her sister, Mrs. Gertrude Steger, at Red Bluff. Mrs. Steger owned a Plymouth coupe. When Mrs. Sanford was ready to return to her home at Hayward, Mrs. Steger directed her son Richard to take her automobile and drive his aunt back to her home. Mrs. Sanford, as a guest in her sister's automobile, started on her return journey on the afternoon of September 9, 1931. Richard did the driving. It was a clear, warm day. They followed the state highway south from Red Bluff over fairly level ground for a distance of about one mile. At this point there is a sharp depression of the roadway where it intersects a substantial swale. From the level highway, until one reaches a point near the dip in the roadway, a vehicle passing through this swale is concealed from view. The highway consists of a concrete strip 15 feet in width with a 6-foot graveled shoulder on either side. Richard Steger was familiar with this road and knew of the depression therein. Although he had not traveled that road for four years he claimed that he did not remember the exact location of the depression. He said in that regard: "I did not know it was so close."

The Plymouth car was running 45 miles an hour when it overtook a light truck traveling ahead of him in the same direction at the rate of 40 miles an hour. When the Plymouth car reached a point about 200 feet from the brow of the declivity, Richard suddenly pulled his machine out from behind the truck to the easterly side of the highway and attempted to pass it. Almost immediately he observed a Chrysler machine approaching over the crest of the hill. This Chrysler car belonged to Charles Grady of Napa. It was being operated by his wife, Laura Grady, who was accompanied by her friend, Mrs. Mount. They were driving carefully at a rate of 25 miles an hour, or at least not to exceed 30 miles an hour. After discovering the Chrysler car as it came into view over the brow of the hill, at which time the front wheels of the Plymouth machine were opposite

the rear wheels of the truck, instead of dropping back behind the truck, Steger sounded his horn and accelerated the speed of his machine in an attempt to cut in ahead of the truck. A collision occurred between the Plymouth and the Chrysler machines on the east side of the paved portion of the highway opposite the truck which Steger had not succeeded in passing. Mrs. Sanford, who rode as a guest in the Plymouth car, was seriously injured, as a result of which she died within a few days.

This suit for damages was instituted against Gertrude Steger and her son Richard pursuant to the provisions of section 141¾ of the California Vehicle Act, for alleged wilful misconduct of the driver of the Plymouth machine. Mr. and Mrs. Charles Grady were joined as party defendants on the theory that they were guilty of concurrent negligence which cooperated with the wilful misconduct of Richard Steger in causing the collision which resulted in the death of Mrs. Sanford. It was charged that Richard was the agent of his mother in driving the Plymouth car, and that Mrs. Grady was the agent of her husband in driving his Chrysler machine. The cause was tried with a jury. Motions for nonsuit, directed verdicts and for the rendering of a judgment under the provisions of section 629 of the Code of Civil Procedure notwithstanding the verdict were made by the respective defendants and denied. A joint judgment for $20,000 was then rendered against the defendants in accordance with the verdict. From that judgment the Stegers and the Gradys have perfected separate appeals.

On appeal, Mrs. Steger and her son Richard contend that the evidence fails to show wilful misconduct in the operation of the Plymouth coupe, and that it fails to show that Richard was driving that car as the agent of his mother at the time of the accident.

On this appeal, Mr. and Mrs. Grady assert there is no evidence of negligence on the part of the operator of their machine; that there is a total absence of evidence that Mrs. Grady was driving the Chrysler car as the agent of her husband, and that, in any event, the judgment against the owner of that machine is limited by the provisions of section 1714¼ of the Civil Code to the sum of $5,000.

■ There is no doubt Richard Steger was driving the Plymouth coupe at the time of the accident as the agent of his mother, and that she is therefore liable for his wilful misconduct in operating the machine. (7–8 Huddy's Ency. of Auto. Law, p. 268, sec. 101; Cal. Jur. Auto. Supp. 1928, p. 293, secs. 125–129; *Ransford* v. *Ainsworth*, 196 Cal. 279 [237 Pac. 747]; *Fahey* v. *Madden*, 56 Cal. App. 593 [206 Pac. 128].) Gertrude Steger testified in that regard: "I asked Richard if he would take her (Mrs. Sanford) to Hayward. . . . My sister's school began on Thursday and she had to be home by Wednesday evening. . . . And he consented to take her to Hayward. . . . Q. And you provided him with . . . your automobile, for that purpose? A. Yes." The record contains no evidence to the contrary. This is a sufficient showing of agency to charge the owner with the wilful misconduct of the operator of the machine. In 7–8 Huddy's Encyclopedia of Automobile Law, page 268, section 101, it is said:

"Where the driver is authorized to invite a person to ride with him, or where the passenger is a guest of the owner, the negligence of the driver causing injury to such invitee may be charged against the principal."

■ We are of the opinion there is adequate evidence to support the implied finding of the jury to the effect that Richard Steger, the driver of the Plymouth coupe, was guilty of wilful misconduct in attempting to pass the truck under the circumstances and in the manner which he did, resulting in the death of Edith Sanford, who was then riding as a guest in the car.

There is very little conflict of evidence regarding the conduct of Richard Steger in attempting to pass the truck. There is no doubt that with knowledge on his part that he was in the vicinity of the declivity in the roadway over which he should have anticipated that an approaching vehicle might come at any moment, he deliberately attempted to pass the truck in reckless disregard to the safety of his passenger. When he actually saw the approaching Chrysler car within less than 200 feet, according to his own admission, instead of pulling his machine back behind the preceding truck which was running 40 miles an hour, as he could have easily done, he persisted in attempting to do the im-

possible thing of cutting in ahead of the truck by accelerating his speed, knowing that the approaching car could escape a collision only by being forced off the highway into the dirt on the border thereof. There is substantial evidence that in passing the truck, the rear wheels of the Plymouth car skidded out upon the dirt shoulder and occupied a position making it impossible for the Chrysler machine to pass his car, even by running out to the extreme edge of the highway. Mr. Shimonek, who was driving the truck, said in that regard:

"It would be approximately 40 feet from the point where the accident occurred, . . . I saw the car . . . clear over on the . . . the back end of the car was skidding to the left . . . in the gravel clear off the highway, . . . just opposite the back end of my truck."

Mrs. Grady testified in that regard: "As I came up over the hill I saw a truck traveling in a southerly direction. . . . It was very close to me. . . . It (the Plymouth car) shot out across in front of me to the left hand (east) side of the road and immediately came right back and struck me. . . . Q. About how fast were you going when you first saw the Plymouth car? A. About twenty-five miles an hour. . . . I jammed on my brakes but I didn't have a chance. . . . I saw it when it shot out from behind the truck. . . . It came right out from back of the truck as though it was attempting to pass, and on across the highway to the left hand (east) side in front of me. . . . Just about here (indicating) is where the other machine crossed the highway. . . . This is the dirt road out here. This car crossed in front of me, . . . circled around, . . . he was going at an excessive rate of speed, and I thought when he got over on the left hand side of the road that he would keep on straight. .If he had, the accident would never have happened, but he turned his car, and when he turned his car that's when I saw him coming toward me, and I put on my brakes."

The reckless disregard to safety with which Richard Steger attempted to pass the truck and his knowledge and appreciation of the danger attending his conduct is evidenced by his own testimony. He said: "Q. You were driving about 45 miles an hour, were you? A. Yes, forty to forty-five. Q. As you followed the truck? A. Yes. Q. And the truck

driver was driving about forty to forty-five miles per hour? A. Yes, forty. Q. You decided, when you were about some two hundred feet from the top of this hill, that you would pass that truck, ahead of you, that's correct, isn't it? A. Yes. . . . I just pulled out, my front wheels caught up with his hind wheels, when I caught sight of that car coming up. Q. . . . You saw ahead of you then an automobile about two hundred feet away, is that correct? A. Yes. Q. And at that time how fast were you traveling? A. About forty-five. . . . I sounded the horn; sounded the horn twice. . . . After I see that car coming up the hill I increased my speed to cut quick in. . . . We run parallel, the little truck and I. . . . Q. . . . After you sounded the horn, you stepped on the gas? A. Yes, sir. Q. Intending to cut in ahead of that truck? A. Yes. Q. Is that correct? A. That's correct. Q. And you saw the other car coming directly toward you? A. Yes. Q. Did you know that if the other car didn't turn out there would be an accident? A. Yes, I knew that. . . . Q. You knew if the other car didn't pull in to the dirt there would be a collision? A. . . . Yes, if they didn't. Q. You thought it would be easier for the other car to pull into the dirt than there would be for you to stop and go around the rear of the truck? A. Yes, sir. . . . I didn't want to give any ground because I know another car might come up that hill. . . . Q. Didn't (you) figure then that you would make the other car get off into the dirt? A. Yes, that (is) what I thought, that it would pull toward its right. . . . Q. Neither one of you got out of the way at all? A. Not that it looked like. . . . Q. At the time you first saw the other car . . . you had time, did you not, if you wanted to, to slow up and go in back of the truck? A. Yes. Q. But you decided to go straight ahead? A. Yes. . . . Q. At the time you first saw the machine of Mrs. Grady it was on its own side of the highway? A. Yes. Q. At the time you first saw Mrs. Grady's car your car was on the east side of the highway? A. Yes. Q. And on the east side of the highway there isn't sufficient room for two machines to pass, is there? A. No.''

Richard Steger admits that he attempted to pass the truck, which was going at least 40 miles an hour within the space of 200 feet which intervened between his car and the crest

of a grade. This was a clear violation of the provisions of section 124 of the California Vehicle Act., The truck was running nearly as fast as his car was traveling. At the rate of 45 miles an hour he would traverse the entire distance to the brow of the hill, 200 feet away, in three seconds. It was little more than half that distance to the point where the collision occurred. He knew there was no possibility of his passing the truck before it reached the declivity. He saw the approaching car and realized there would be a collision unless the Grady car ran off into the ditch. He was then so far out on the shoulder of the road as to make that impossible. Still he sounded his horn, increased his speed and plunged directly into the approaching car. He knew that if the approaching car did not pull out into the dirt there would be a collision. Under such circumstances the jury was warranted in finding that Richard Steger was guilty of wilful misconduct.

Wilful misconduct is defined in the case of *Norton* v. *Puter*, 138 Cal. App. 253 [32 Pac. (2d) 172], in which case a hearing was denied by the Supreme Court, as follows:

"Wilful misconduct depends upon the facts of a particular case, and necessarily involves deliberate, intentional, *or wanton* conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, *that danger is likely to result therefrom.* (*Helme* v. *Great Western Milling Co.*, 43 Cal. App. 416 [185 Pac. 510]; *Olson* v. *Gay*, 135 Cal. App. 726 [27 Pac. (2d) 922]; *Walker* v. *Bacon*, 132 Cal. App. 625 [23 Pac. (2d) 520]; *Howard* v. *Howard*, 132 Cal. App. 124 [22 Pac. 279].) Webster's New International Dictionary, page 1379, defines 'misconduct' as 'wrong or improper conduct; bad behavior; unlawful behavior or conduct, malfeasance'. (40 C. J., p. 1221.) Wilfulness necessarily involves the performance of a deliberate or intentional act or omission regardless of the consequences. In *Helme* v. *Great Western Milling Co.*, *supra*, it is said:

" ' "Wilful misconduct" means something different from and more than negligence, however gross. The term "serious and wilful misconduct" is described by the Supreme Judicial Court of Massachusetts as being something "much more than mere negligence, or even gross or culpable negligence" and

as involving "conduct of a *quasi* criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its possible consequences". (*In re Burns*, 218 Mass. 8, Ann. Cas. 1916A, 787, 105 N. E. 601.) The mere failure to perform a statutory duty is not alone, willful misconduct. It amounts only to simple negligence. To constitute "willful misconduct" there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury. (*Smith* v. *Central etc. Ry. Co.*, 165 Ala. 407 [51 So. 792].)' "

This brings us to the problem of determining whether there is substantial evidence to support the implied finding of the jury to the effect that Mrs. Grady was guilty of negligence which was proximately concurrent with the wilful misconduct of Richard Steger in producing the accident which resulted in the death of Mrs. Sanford. We are satisfied from a careful examination of the entire record, there is no substantial evidence to support the judgment against Charles or Laura Grady. We are unable to find any act or omission on the part of Mrs. Grady which is contrary to that which might be expected of a reasonably prudent person under like circumstances. No such act or omission is suggested by the respondents. She was ascending the highway to the crest of a grade at a very moderate rate of speed. She was on her proper side of the highway. She had a right to assume that an approaching machine would not deliberately drive upon her side of the highway in violation of section 124 of the California Vehicle Act. When she reached the top of the grade and caught sight of the approaching Plymouth car within 200 feet distance traveling out upon the dirt shoulder and coming toward her at an excessive rate of speed, as a reasonable person, she had a right to assume that the driver of that car would observe the impossibility of passing the rapidly moving truck, and that he would drop back behind that vehicle. After reaching her position at the top of the grade, where she first saw the approaching machine about 200 feet away, less than two seconds of time elapsed before the collision occurred. The moment that she

realized the serious predicament in which she was placed and that the driver of the Plymouth car persisted in coming onward at a high rate of speed, she applied her brakes, but was unable to avert the collision. Clearly there is no evidence in the record of a single act or omission on her part in conflict with what would have been expected of a reasonably prudent person under similar circumstances. There is no substantial evidence upon which the jury was warranted in finding that Mrs. Grady was guilty of negligence which contributed in the slightest degree to the accident. The judgment against Charles and Mrs. Grady is therefore not supported by the evidence.

While it is true there is no evidence that Laura Grady was acting as the agent of her husband in driving his automobile at the time of the accident, and under no circumstance could he be held liable for the accident which occurred out of his presence, under the provisions of section 1714¼ of the Civil Code, beyond the maximum sum of $5,000, these issues become immaterial in view of the fact that we are persuaded Mrs. Grady was guilty of no negligence which creates a liability against either her or her husband.

The judgment is affirmed against Gertrude Steger and Richard Steger. The judgment against Charles S. Grady and Laura C. Grady is reversed, with directions to the trial court to enter judgment in their favor.

Pullen, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 10, 1934, and applications by appellants and respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 10, 1934.