[Civ. No. 8897.    Fourth Dist., Div. One.    Oct. 30, 1968.]

ELIZABETH WORKMAN, Plaintiff and Appellant, v. CITY OF SAN DIEGO et al., Defendants and Respondents.

Fletcher & Rauch and Bruce I. Rauch for Plaintiff and Appellant.

Higgs, Jennings, Fletcher & Mack and Arthur W. Jones for Defendants and Respondents.

LAZAR, J. pro tem.*—Plaintiff appeals from a judgment against her entered upon a jury verdict in favor of defendants.

### FACTS

We summarize the facts as follows:

Plaintiff, at time of trial, was about 60 years old. During her lifetime she had been subject to a congenital bone disease which rendered the bones susceptible to fracture under conditions of little or no apparent trauma. The condition was most severe in the lower extremities and plaintiff had never been able to walk. Her mode of self-transportation was by wheelchair.

Plaintiff was married and was able, in spite of a history of many fractures, to perform household tasks and to care for personal needs within limitations. She was able to operate the wheelchair alone under favorable conditions but depended upon her husband's assistance most of the time when they were away from home.

During a vacation trip to Southern California, plaintiff and her husband visited Sea World in San Diego. They had been informed that it was particularly suited to wheelchair operation. Plaintiff testified that during the visit to Sea World she had been by herself and had propelled the wheelchair without her husband's assistance. When they were together he pushed the wheelchair, frequently guided or directed by plaintiff.

In going to one of the exhibits, the wheelchair, propelled by the husband, came to a 4-inch curbing. The wheelchair dropped abruptly. In the course of the unexpected incident, plaintiff received a fracture of her right elbow, which, according to the testmony produced on behalf of plaintiff, was greatly disabling and limiting with respect to the activities she had been able previously to carry on.

Aside from the question of defendants' negligence in main-

*Assigned by the Chairman of the Judicial Council.

tenance of the curbing, a principal issue was the question of contributory negligence upon the part of plaintiff's husband as the agent of plaintiff and the imputation of that negligence to plaintiff.

Plaintiff complains of the court's action in suggesting and permitting an amendment to defendants' affirmative defense of imputable contributory negligence upon the part of plaintiff's husband which defined his status to be "as her agent." Such amendment was not prejudicial to plaintiff for it actually served to define a burden of proof to be met by defendants. We are unable to perceive how plaintiff's factual showing of the case could have been presented any differently even if the designation of the husband as plaintiff's agent had been included in the pleading as originally filed. We note that plaintiff made no request to reopen for the purpose of further evidence directed to the question of agency.

Plaintiff further complains that the trial court erred by instructing the jury that plaintiff's husband was the agent of plaintiff in the operation of the wheelchair and that if the jury found he was guilty of negligence proximately contributing to the injuries suffered by plaintiff, his negligence would be imputed to her.

The validity of the trial court's action requires a consideration of what is meant precisely by the phrase "principal and agent."

"An agent is one who represents another, called the principal, in dealing with third persons. Such representation is called agency." (Civ. Code, § 2295.) (See also *Store of Happiness* v. *Carmona & Allen, Inc.*, 152 Cal.App.2d 266 [312 P.2d 1104].)

"Agency is the relation that results from the act of one person, called the principal, who authorizes another, called the agent, to conduct one or more transactions with one or more third persons and to exercise a degree of discretion in effecting the purpose of the principal. The heart of agency is expressed in the ancient maxim: 'Qui facit per alium facit per se.'" (*Wallace* v. *Sinclair*, 114 Cal.App.2d 220, 229 [250 P.2d 154].)

The designation of "principal and agent" has been extended to cases of permissive use of motor vehicles in giving effect to the statutory vicarious liability imposed upon owners by the Vehicle Code (*Souza* v. *Corti*, 22 Cal.2d 454 [139 P.2d 645, 147 A.L.R. 861]), although the varying views of the dissenting opinions in the case cited show the questionable validity of appropriating the technical relationship of principal

and agent to the non-common law liability of the statute. Respondents' reliance upon *Glanville* v. *Cannick*, 182 Cal. App.2d 514 [6 Cal.Rptr. 175], which in turn relies upon *Souza*, is misplaced, for the reason that motor vehicle cases involving injuries to third persons are not analogous to the use of a wheelchair in which the invalid passenger is injured as the result of concurrent negligence by two independent actors. Loose use of the phrase "principal and agent" cannot suffice to establish a relationship which upon the facts and basic legal principles did not exist.

What of master and servant? In terms this relationship comes quickly to mind when we consider the circumstances—an invalid confined to a wheelchair and dependent upon others for substantially all its operation and manipulation. There would be no question of the relationship if a nonrelated nurse or attendant were the operator. In such case, the situation with respect to imputed negligence would be the same as in the case of principal and agent. The parallel between "principal and agent" on the one hand and "master and servant" on the other is to be found in the right of the principal to control the agent or the master to control the servant.

Injected into the case at bench is the fact that the person who may have been contributorily negligent is the husband of the injured person. He was not her agent. Was he her servant? We do not question that the legal relationship of employer-employee may exist between spouses, but the evidence in the instant case would support no such conclusion.

There remains a third situation in which contributory negligence may be imputed, i.e., joint enterprise or joint venture. "But to constitute such a relationship, the parties must have a community of interest in a joint or common undertaking, each exercising or having the right to exercise equal or joint control and direction [citations]. The relationship of joint venturers is that of a mutual agency, akin to a limited partnership [citations.] It is founded on contract; and the acts of the parties over a period of time may be sufficient to raise an implied agreement of joint enterprise [citation]." (*Campagna* v. *Market Street Ry. Co.*, 24 Cal.2d 304, 308 [149 P.2d 281].) However, "The doctrine of imputed negligence is not to be loosely applied, and 'when there is nothing in common between the passenger and the driver of the vehicle except a common destination and a common purpose in going there, the negligence of the driver is not to be imputed to the passen-

ger.' (*Wessling* v. *Southern Pac. Co.*, 116 Cal.App. 455, 458 [3 P.2d 25].) The passenger must do more than to indicate the route to be traveled, and a certain plan in common is not sufficient to establish the relationship. [citation] Neither family relationship between the parties. nor association together in business, is determinative of the question [citations]." (*Campagna* v. *Market Street Ry. Co.*, 24 Cal.2d 304, 309 [149 P.2d 281].)

In *Jones* v. *Reith*, 166 Cal.App.2d 220, the cases dealing with the problem are reviewed and at page 229 [333 P.2d 226] the court quotes from *Roberts* v. *Craig*, 124 Cal.App.2d 202 [268 P.2d 500, 43 A.L.R.2d 1146] : " 'It is not sufficient that the parties have certain plans in common, but the community of interest must be such that the passenger is entitled to be heard in the control of the vehicle [citations]. Most of the cases indicate that the common interest must be of some business nature. (20 Minn.L.Rev. 401, 404; 16 Cornell L.Q. 320). . . . If the parties are joint adventurers, the right to control becomes of legal significance. If they are not so engaged the mere right to control which is not exercised is not sufficient to create the vicarious liability.' " At page 231, the court also quotes with approval the statement in *Anthony* v. *Kiefner*, 96 Kan. 194 [150 P. 524, at p. 525] : " 'The doctrine of imputable negligence, except when countenanced by statute, is a fiction of the law which finds small favor with the courts. . . .' "

The evidence in the case at bench indicates nothing more in the relationship of the parties than that of wife and husband. We may define their situation as simply an extension of the responsibilities which are assumed incident to the marriage vows. There is only quantitative, not qualitative, difference between the necessity of convalescent care of a sick or injured spouse and the permanent care of the spouse who is irremediably incapacitated by illness or accident. Upon what basis can there be attached to the necessity of lifelong care a legal relationship different from that attaching to casual or temporary assistance by a husband or wife? We apprehend none. If the conduct in question is solely related to and arises out of the natural and expected amenities between spouses, public policy would suggest the undesirability of requiring the spouses to evaluate the possible legal effect of such conduct on each occasion. In *Cox* v. *Kaufman*, 77 Cal.App.2d 449, 452 [175 P.2d 260], with reference to a husband driving his wife to their common place of employment in the community

property car, it was said: ''The fact that he was transporting her to her work cannot support an inference that he yielded this right of control to her. In this respect she was no different from a stranger who might have been accommodated by the husband in the same way.''

In *Marquis* v. *St. Louis-San Francisco Ry. Co.*, 234 Cal. App.2d 335, 351 [44 Cal.Rptr. 367] the court said: ''It is argued that Mrs. Marquis was a negligent passenger and hence entitled to no recovery. Concededly, her husband's negligence, if any, was not imputable to her as she was a mere passenger in a car belonging to him.'' ▮ More specifically: ''[I]t has been settled that the family relationship standing alone is not sufficient to convert family activities into joint enterprises for purposes of imputing negligence. (citations)'' (*Flores* v. *Brown*, 39 Cal.2d 622, 630 [248 P.2d 922].) ▮ It is worthy of note that at the time of *Flores*, the proceeds of an action by a wife for her injuries would be community property which would have required the husband's negligence to be imputed to her if he survived the accident; as he did not, the widow was not subject to the defense of contributory negligence upon her husband's part. Since then, of course, Civil Code, section 163.5, making a spouse's recovery of damage for negligent injuries his or her separate property, has been enacted, indicating the legislative policy that husband and wife should have an independent legal identity for the purposes of tort actions.

Nothing in the evidence in this case provides a foundation for imposing upon plaintiff the burden of imputed negligence either as a matter of law or of fact.

The views expressed render it unnecessary to rule or comment upon any other contentions of the parties.

The judgment is reversed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied November 18, 1968 and respondents' petition for a hearing by the Supreme Court was denied December 24, 1968.