[Civ. No. 41778. Second Dist., Div. Five. Apr. 15, 1974.]

STEVEN JOHNSON, a Minor, etc., et al., Plaintiffs and Appellants, v. EDWARD PETERSON et al., Defendants and Respondents.

## COUNSEL

Morgan, Wenzel & McNicholas and Charles B. O'Reilly for Plaintiffs and Appellants.

Reilly, Holzhauer & Nimmo and Robert L. Thompson for Defendants and Respondents.

## OPINION

**KAUS, P. J.**—Plaintiffs and appellants, Steven Johnson, a minor, and his parents George and Agnes, recovered judgments, after a jury verdict, against defendant Christine Peterson, a minor, and against her parents Edward and Gloria, for a total amount of $30,000. The trial court entered both judgments, but limited the judgment against the parent defendants to

$10,000, the jury having been waived on the issues of the nature and extent of the parents' liability. Plaintiffs' appeal raises only the issue of the limitation of the judgment against the parents.

FACTS

In September 1967, defendant Christine, then a minor, was driving a family automobile, with her younger sister, Pamela, as a passenger, when she collided with and injured plaintiff Steven, riding a motorcycle.

Plaintiffs then sued Christine and her parents under Vehicle Code sections 17707 and 17708, which impute the civil liability of a minor arising out of the operation of a motor vehicle to "the person who signed and verified the application of the minor for a license" (Veh. Code, § 17707) and to the parents if the vehicle is being driven with their "express or implied permission" (Veh. Code, § 17708). The liability imposed by either section was at the time the accident occurred limited to $10,000. (Veh. Code, § 17709.)[1]

Later, based on the declaration of plaintiffs' attorney that he had learned that the parents had $100,000 of insurance, the complaint was amended to raise the prayer and to plead agency as to the parents. As noted, after the jury determined liability and fixed damages at $30,000, the court ruled in favor of the parents on the issue of agency, finding that Christine was not their agent at the time of the accident. Liability was therefore limited to $10,000. (Veh. Code, §§ 17709, 17714.) On plaintiffs' appeal they admit that the evidence is sufficient to support the findings of evidentiary facts; they disagree only with the ultimate conclusion.

The findings of fact are as follows:

The motor vehicle involved in the accident was given to the parents, for their own and Christine's use, by Christine's grandparents, who were the registered owners at the time of the accident. Christine was 16 years old; the parents had signed her application for a driver's license.

Christine was driving the vehicle on the date of the accident. At her mother's request, she had driven her younger sister, Pamela, to the doctor's office. After the doctor's visit, she planned to go to the beach with Pamela and a friend. These plans were cancelled. She phoned her mother and in the course of the conversation the mother suggested that if Christine had nothing else to do, she should take Pamela to Panorama City to buy shoes for her. Christine told her mother that she probably would, but was not

---

[1] Vehicle Code section 17714 provides that the remedies afforded by sections 17707, 17708 and 17150 of the Vehicle Code are not cumulative.

sure, and that if she did go to Panorama City, she would probably do some shopping for herself as well.[2] After the conversation, Christine decided to go to Panorama City, to comply with her mother's request. The accident occurred on the way.

## DISCUSSION

The general rules of agency, in the context of a gratuitous act performed for the alleged principal, are summarized in *Flores* v. *Brown,* 39 Cal.2d 622 [248 P.2d 922]. In that case, defendant Brown, driving his tractor, was towing defendant Murray's trailer at the time of the accident. He was returning the trailer to Murray. The trip was for the benefit of Murray. (39 Cal.2d at pp. 627-628.)

In holding that Brown was not the agent of Murray, the court ruled: "[T]he determinative issue is whether or not the alleged principal controlled or had the legal right to control the activities of the alleged agent. [Citations.] . . . [¶] It has frequently been held that when one person is driving another's automobile for the latter's benefit an inference of agency may be drawn. [Citations.] In such cases the right to control may be inferred from the owner's power over the way his automobile should be operated, particularly when he is present on the trip." (*Id.* at p. 628.)

Concededly the alleged principals were not present when the accident in the case at bar happened. There is, however, no such requirement.

Thus, in *Perry* v. *McLaughlin,* 212 Cal. 1, 14 [297 P. 554], the defendant husband drove his car with his wife and plaintiff passenger to a country club. He asked the wife to return later to pick him up. The accident happened as the wife and the plaintiff were driving away from the club. This justified an inference of agency. In *Souza* v. *Corti,* 22 Cal.2d 454, 461 [139 P.2d 645, 147 A.L.R. 861], Arthur Gigli, who had borrowed his father's car, asked his friend, John Corti, to drive it to a night club while Arthur drove there with his date in her car. Agency was held established as a matter of law. Similarly, in *Sanford* v. *Grady,* 1 Cal.App.2d 365, 368 [36 P.2d 652, 37 P.2d 475], the court had "no doubt" that the driver-son was his mother's agent where she had asked him to drive the plaintiff in her car to a specified location.

■ For purposes of determining whether Christine was her mother's agent, we find it immaterial that the mother may have "suggested" rather than "requested" that Christine take Pamela to buy shoes; the issue of

---

[2]Asked for the purpose of her trip, Christine volunteered that its "main purpose" was to get shoes for Pamela.

agency should not turn on the delicacy of the principal's choice of words. In any event, the suggestion was acted on. Similarly, it is beside the point that Christine may incidentally have been planning to do some shopping for herself. In *Souza* v. *Corti, supra,* the facts were that the two men, Arthur and John, were having a night out with two girls. One of the dividends of the arrangements requested by Arthur was that Corti, the agent, was left alone with his girl.

In this case, the argument for imputing the liability of Christine to her parents is even stronger than in any of the authorities mentioned. First, Christine was a minor and, as such, under the general control of her parents. (*Turner* v. *Turner,* 167 Cal.App.2d 636, 642 [334 P.2d 1011]; see generally Civ. Code, §§ 197, 204, 211, 212, 213.) Second, in contrast to *Perry* v. *McLaughlin, supra,* 212 Cal. 1, and *Souza* v. *Corti, supra,* 22 Cal.2d 454, Christine was engaged in a task normally performed by parents themselves: the purchase of clothing for a minor child.[3]

Defendants point to a series of cases in which the fact that one family member was performing "familial services" for another, who later became a claimant, was given no legal effect. In each case, however, the court struck down an attempt by a negligent defendant to escape the legal consequences of his own fault by arguing that the alleged concurrent negligence of the accommodating family member in effect immunized him from liability to the injured plaintiff. Thus, in *Edwards* v. *Freeman,* 34 Cal.2d 589, 591 [212 P.2d 883], the defendant collided with an automobile driven by the plaintiff-mother's adult son, who was taking her to the eye doctor as a "mere favor . . . without being subject to any legal duty of service and without assenting to any right of control" by the mother. No agency was held to exist. (See also, *Marquis* v. *St. Louis-San Francisco Ry. Co.,* 234 Cal.App.2d 335, 351 [44 Cal.Rptr. 367].)

*Harpst* v. *Kirkpatrick,* 26 Cal.App.3d 482 [102 Cal.Rptr. 621] and *Casas* v. *Maulhardt Buick, Inc.,* 258 Cal.App.2d 692 [66 Cal.Rptr. 44], are remarkably alike on their facts. In each case a grandmother was babysitting with a grandchild. In *Harpst* the defendant negligently killed the child, in *Casas* he injured it. In each case the defendant attempted to utilize the grandmother's negligence in supervising the child for the purpose of imputing it to the plaintiff-parents. In neither case did the effort succeed.

Finally, in *Workman* v. *City of San Diego,* 267 Cal.App.2d 36 [72 Cal. Rptr. 509], a wife was injured because of the defendant City's negligence

---

[3]In *Sanford* v. *Grady, supra,* the driver-son was taking his aunt, the plaintiff, from his mother's home to her own home.

while her husband was pushing her in a wheelchair. The Court of Appeal rejected the argument that the husband was the wife's agent, holding that the evidence "indicates nothing more in the relationship of the parties than that of wife and husband." The court pointed out the undesirability of one spouse contemplating the legal consequences each time he or she permits the other to perform a "natural and expected" amenity. (*Id.* at p. 40.)

The difference between these cases in which attempts to impute a third party's negligence to defeat the recovery of an innocent plaintiff were struck down and the case at bar is well pointed up by this rationale of *Workman:* It is obviously eminently desirable that before a parent dispatches a 16-year-old youngster on a family errand in a family car, he should contemplate the legal consequences of doing so.[4] Our law's refusal to immunize a tortfeasor from the consequences of his wrong simply because his victim accepted a familial amenity, certainly does not mandate that we ignore the vital policy considerations which impose on principals vicarious liability to the innocent victims of their agents' torts. (See *Souza* v. *Corti, supra; Perry* v. *McLaughlin, supra; Sanford* v. *Grady, supra;* cf. *Barrera* v. *State Farm Mut. Automobile Ins. Co.,* 71 Cal.2d 659, 671-672 [79 Cal.Rptr. 106, 456 P.2d 674].) The policies which support such liability and those which negate a tenuous "vicarious contributory negligence" are clearly different. (See Gregory, *Vicarious Responsibility and Contributory Negligence* (1932) 41 Yale L.J. 831, 835; 2 Harper & James, Law of Torts, § 23.6, p. 1273, seq.)[5]

The judgment is reversed.

Stephens, J., and Ashby, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 13, 1974. McComb, J., Burke, J., and Clark, J., were of the opinion that the petition should be granted.

---

[4]California has never followed the so-called "family purpose doctrine," a rule creating vicarious liability where none exists. (*Spence* v. *Fisher,* 184 Cal. 209, 214-215 [193 P. 255, 14 A.L.R. 1083].) It is, however, interesting to note that attempts to use that doctrine defensively have been almost unanimously rejected. (See cases collected in Annot. (1966) 8 A.L.R.3d 1191, 1219.)

[5]The California Legislature agrees. Until 1967 the vicarious responsibility of the owner of an automobile prescribed by section 17150 of the Vehicle Code was imputed to the owner "for all purposes of civil damages." In *Milgate* v. *Wraith,* 19 Cal.2d 297 [121 P.2d 10], that provision was interpreted to impute a permittee's negligence to the owner when he became a plaintiff against a third party. In 1967 the quoted language of section 17150 was dropped. (Stats. 1967, ch. 702, p. 2072, § 1.) The Senate's comment to the change states in part that the language was deleted because it "prevented an innocent vehicle owner from recovering any damages for a personal injury caused by the concurring negligence of his driver and a third person." Thus, an owner-permittee relationship will not prevent the owner from recovering from a negligent third party, although the identical relationship will make him liable to an innocent victim.