[No. F010034. Fifth Dist. Sept. 21, 1989.]

ST. PAUL INSURANCE COMPANY, Plaintiff and Appellant, v. INDUSTRIAL UNDERWRITERS INSURANCE COMPANY, Defendant and Respondent.

118

COUNSEL

Eldridge, Anderson & Weakley and Jeffrey H. Smith for Plaintiff and Appellant.

Mushines, Van Doren, Cook & Morris, Dominic P. Mushines and John W. Morris, Jr., for Defendant and Respondent.

OPINION

**DIBIASO, J.**—The appellant asserts the lower court erred in deciding a customer of an auto dealership was not the dealership's "agent" for purposes of the application of Insurance Code section 11580.9, subdivision (a). At stake is the responsibility, as between the customer's insurer (appellant) and the dealership's insurer (respondent), for bearing the costs of defense and settlement of a personal injury lawsuit brought by the occupants of a vehicle which collided with a used automobile owned by the dealership and driven by the customer. We affirm.

### FACTS

At about 9 a.m. on August 31, 1983, James H. Brown and Mattie Brown, husband and wife, arrived at the Kingsrow Ford Lincoln Mercury, Inc. (Kingsrow), auto dealership in Hanford. In the market for transportation, they had come to Kingsrow for the sole purpose of shopping for a car. There they met, for the first time, a salesman, one Ervin Ash, who offered them a test drive of a 1978 Ford LTD. The Browns decided to try out the car.

Before the Browns left the Kingsrow premises, Ash suggested[1] they stop at a nearby Chevron service station during the test drive to "get some gas" on Kingsrow's account, because the car was "low on gas." The salesman gave one of his business cards[2] to Mr. Brown and told him he should show the card to the station attendant.

The Browns then drove the car off the Kingsrow lot to the Chevron station, a distance of about a block. No one from Kingsrow accompanied them. The Browns used the card and the attendant fueled the car with an unknown amount of gas.

The Browns departed the station and continued on their test drive. Mr. Brown chose his own route and personally drove throughout. Ash had not instructed the Browns to take any particular route or to return the car to Kingsrow at any particular time. No stops were made after the Browns left the station other than for traffic signals. During the course of the test drive, the Browns discussed the car and its performance. Some 20 minutes after the Browns had left Kingsrow, they were involved in an accident with another car.

On the date of the accident the Browns were insured by appellant, St. Paul Insurance Company (St. Paul); Kingsrow was insured by respondent, Industrial Underwriters Insurance Company (Industrial). The Browns' St. Paul policy had limits of $100,000 per person and $300,000 per accident, along with $100,000 in property damage coverage per accident. Kingsrow's Industrial policies provided automobile bodily injury and property damage liability coverage in the amount of $500,000 combined single limit as to each occurrence.

The accident generated a personal injury and property damage lawsuit filed by Cynthia Fonseca and Rosemary Alaysa, the occupants of the automobile which collided with the car being test-driven by the Browns. Mr. Brown and Kingsrow were named as defendants. St. Paul asked Industrial to defend and indemnify Brown with respect to the action; Industrial refused.

---

[1] The stipulated facts, as recited on the record by counsel at trial, characterize Mr. Ash's statement as a "request" that the Browns have the car fueled; the transcript of Mr. Brown's deposition, received in evidence at the trial by stipulation, describes Mr. Ash's statement as a "suggestion." We have chosen the version consistent with the witness's testimony, although our opinion would not change if we had selected the stipulation's language.

[2] The reverse of the card contains a handwritten notation made by Mr. Brown within a few days of the accident in question. However, because the record on appeal does not include a copy of the back of the business card, we are in the dark about its contents and therefore its relevance.

In February 1986 St. Paul settled the lawsuit by paying $85,000 to Fonseca and Alaysa. St. Paul expended $4,027.21 in defense costs and attorney fees. The settlement sum and the costs of defense were reasonable under the circumstances.

On July 1, 1986, St. Paul filed a complaint for declaratory relief which sought determinations that St. Paul's policy was secondary and Industrial's primary with respect to the claims of Fonseca and Alaysa arising out of the accident. At trial, the parties entered into certain factual stipulations concerning events pertinent to the case and the court received the following documents into evidence: the parties' respective insurance policies; the transcript of Mr. Brown's deposition taken March 18, 1987; Ash's business card; and the invoices and bills submitted by the law firm engaged by St. Paul to defend Mr. Brown. Briefs were filed by both parties, and the case was argued and submitted.

The court subsequently made its written decision, which read in part: "[T]he Court concludes that under the provisions of Insurance Code Section 11580.9(a) Plaintiff St. Paul Insurance Co., as the insurer of Defendant driver, is the primary insurer with respect to the loss which is the subject matter of the complaint, and Industrial Underwriters Insurance Company (Industrial), the insurer of Defendant automobile dealer, is the excess insurer.

"Although Defendant driver might have been acting as Defendant automobile dealer's agent in driving the subject vehicle to the service station and refueling it, conferring a benefit on the dealer, complying with its instructions as to the manner of performance, and representing the dealer in transacting business with the service station operator [citation], this errand had been completed at the 'time of the loss', *and the driver was operating the vehicle on his own account and not as agent of the dealer at the time of the accident. . . .*" (Italics added.)

A statement of decision was not requested and judgment was entered in favor of Industrial.

## I.

Insurance Code[3] section 11580.9, subdivision (a), provides: "(a) Where two or more policies affording valid and collectible automobile liability insurance apply to the same motor vehicle in an occurrence out of which a

---

[3] All statutory references are to the Insurance Code unless otherwise indicated.

liability loss shall arise, and one policy affords coverage to a named insured engaged in the business of selling, repairing, servicing, delivering, testing, road-testing, parking, or storing motor vehicles, then both of the following shall be conclusively presumed:

"(1) If, at the time of loss, the motor vehicle is being operated by any person engaged in any of these businesses, *or by his or her employee or agent,* the insurance afforded by the policy issued to the person engaged in the business shall be primary, and the insurance afforded by any other policy shall be excess.

"(2) If, at the time of loss, the motor vehicle is being operated by any person other than as described in paragraph (1), the insurance afforded by the policy issued to any person engaged in any of these businesses shall be excess over all other insurance available to the operator as a named insured or otherwise." (Italics added.)

■ St. Paul contends the facts before the trial court demonstrated as a matter of law that Brown was Kingsrow's "agent" under subdivision (a)(1) of section 11580.9. Thus, according to St. Paul, Industrial, as Kingsrow's carrier, was obliged to indemnify St. Paul for the cash settlement paid to Fonseca and Alaysa and for the costs paid out by St. Paul in defending and resolving the personal injury action.[4] We need not and do not decide the narrow question posed by Industrial concerning whether the Legislature had some particular limited or special meaning in mind for the word "agent" in subdivision (a)(1), because we have concluded under the principles of traditional agency law Mr. Brown was not, as a matter of law, an agent of Kingsrow at the time of the accident.

The result in this case is dictated by *Edwards v. Freeman* (1949) 34 Cal.2d 589 [212 P.2d 883]. There, an action for personal injuries arose out of a collision between a truck driven by the defendant and an auto which was owned and driven by the plaintiff's adult son and in which the plaintiff was riding. At issue was whether the plaintiff's son was her agent, such that his contributory negligence, if any, would bar her recovery. The evidence showed that on the day before the accident, plaintiff told her son she would like to go with him into town the next time he made the trip, in order to have her eyes tested. In response, the son told the plaintiff he was "going to town" the next day to see his physician. He in fact picked up plaintiff the next day, and on the way to town the accident occurred.

---

[4] Because the amounts in issue are not greater than the applicable limits of each of the carrier's respective policies, if St. Paul is correct the entire burden of the accident will be shifted to Industrial. In other words, there is no worry here about any excess liability.

The Supreme Court found the question of "agency" was not an issue: "To permit a finding of agency upon this evidence would be, in effect, to hold that one who performs a mere favor for another, without being subject to any legal duty of service and without assenting to any right of control, can be an agent. This is not the law. 'Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' (Restatement, Agency, § 1.) 'The principal must in some manner indicate that the agent is to act for him, *and the agent must act, or agree to act on his behalf and subject to his control.*' (*Id.,* comment on subsec. 1.) In the absence of the essential characteristic of the right of control, there is no true agency . . . ." (*Edwards* v. *Freeman, supra,* 34 Cal.2d at pp. 591-592, italics added.)

That control is a decisive factor is well established. (*Ellstrom* v. *New York Life Insurance Co.* (1967) 67 Cal.2d 503, 513 [63 Cal.Rptr. 35, 432 P.2d 731]; *Flores* v. *Brown* (1952) 39 Cal.2d 622, 628 [248 P.2d 922]; *Stevens* v. *Roman Catholic Bishop of Fresno* (1975) 49 Cal.App.3d 877, 884 [123 Cal.Rptr. 171]; Rest. 2d Agency, § 14; 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, §§ 14, 15 & 37.)

In *Flores* v. *Brown, supra,* 39 Cal.2d at page 627, the plaintiff's auto was struck by a tractor-trailer driven by defendant Brown, who owned the tractor. Another defendant, Murray, owned the trailer. Brown had arranged for the use of Murray's equipment on one of his hauling contracts. Once the job ended, Murray recovered all of his equipment except one trailer, which was left in Lakeport. Feeling obligated to assist in returning the trailer to Murray in Los Angeles, Brown agreed that the next time he was in Lakeport with a tractor he would take the trailer as far as King City, unless Murray picked it up sooner. No compensation was contemplated or ever given for this service. Eventually, Brown picked up the trailer at Lakeport. While on his way to King City, he was involved in the accident out of which the case arose.

At issue was whether Brown's negligence was imputable to Murray, that is, whether Brown was acting as Murray's agent. The court, following *Edwards* v. *Freeman,* focused on the essential element of the right to control: "The primary test for determining whether a person performing gratuitous services for another does so as the latter's agent is the same as that applied to determine whether one performing services for compensation does so as an employee or as an independent contractor, *and in both situations the determinative issue is whether or not the alleged principal controlled or had the legal right to control the activities of the alleged agent.* [Citations.]

Accordingly, it is unnecessary to decide whether the jury could reasonably infer that Brown was not acting gratuitously. It need only be determined whether there is any evidence from which the jury could infer that Murray had the right to control the manner in which the job was done." (*Flores* v. *Brown, supra,* 39 Cal.2d at p. 628, italics added.) The court found nothing in the evidence from which a right of control could be inferred. (*Ibid.*)

As did the courts in *Edwards* and *Flores,* we here conclude there is insufficient evidence to support a conclusion that Kingsrow had the right to control Brown. Neither Ash nor anyone else at Kingsrow set any time limits on the test drive or told the Browns what route to take. Since no one from Kingsrow was in the car during the test drive, Kingsrow was not in a position to direct the Browns to travel any particular course, to make any particular stops, or take any other action. (See Annot. (1953) 31 A.L.R.2d 1445, 1452-1453.)

The Browns' visit to the service station in response to Ash's suggestion does not establish control. When the Browns drove the used car off the Kingsrow lot, they were not obliged to proceed to the station to fuel up the car for Kingsrow's benefit. Instead, they were free to drive the car half a block, a full block, around the block, or so far as they could go on whatever gas was in the tank when they departed the premises. If they chose to limit their test drive to one which could be accommodated by the fuel already in the car, Kingsrow could not object or require them to stop at the station or take them to task for failing to stop at the station. Thus, when the Browns did present themselves at the station in response to Ash's suggestion, they performed a wholly gratuitous act, as much for their benefit in permitting them a longer test drive as for the benefit of Kingsrow.

St. Paul asserts the purported advantages to be secured by Kingsrow as a consequence of the test drive and the station stop decisively establish agency. We do not find either the wholly speculative "benefit" of a possible sale by Kingsrow or the negligible benefit (cf. *Van Den Eikhof* v. *Hocker* (1978) 87 Cal.App.3d 900, 906 [151 Cal.Rptr. 456]) of the stop at the station sufficient to support an inference of agency. Control may not be inferred merely from the fact that one person's act benefits another. (*Flores* v. *Brown, supra,* 39 Cal.2d at pp. 628-629.) One who performs a gratuitous favor confers a benefit upon the recipient, yet no agency results. The essential element of an agency relationship is the right of control, not the dispensing of weal. (*Ibid.*; *Edwards* v. *Freeman, supra,* 34 Cal.2d at pp. 591-592.)

At best, if an agency relationship between Brown and Kingsrow ever materialized, it was a "special" agency (Civ. Code, § 2297) for a limited

purpose, which commenced at the moment Brown presented Ash's card and asked for fuel. When that transaction was concluded, any agency also concluded. But even that view of the case is unwarranted, for Brown was under no duty to Kingsrow to use the card and bind Kingsrow to pay the costs of the gas. Brown was quite free to pay for the service himself.

St. Paul also asserts because Brown was bound to return the car to Kingsrow after the test drive with the added fuel, any agency, whether special or general, continued until the completion of the test drive and therefore was in effect at the time of the accident. However, the obligation to return the auto to Kingsrow did not arise because the car was fueled at Kingsrow's expense. The Browns' obligation, as bailees and permissive users of the vehicle, came into existence the moment they commenced the test drive and continued regardless of whether they stopped at the station. Their response to Ash's suggestion had nothing to do with, and existed quite independently from, their legal duty to return the car.

Neither *Souza* v. *Corti* (1943) 22 Cal.2d 454 [139 P.2d 645, 147 A.L.R. 861], nor *Johnson* v. *Peterson* (1974) 38 Cal.App.3d 619 [113 Cal.Rptr. 445], cited by St. Paul, support a decision in its favor. As the Supreme Court noted in *Flores* v. *Brown, supra,* 39 Cal.2d at page 628, the lender of the car in *Souza* v. *Corti* had control over the use and direction of the automobile while the defendant drove it, even though the lender was not present at the time of the collision. (*Souza* v. *Corti, supra,* at p. 461.)

In *Johnson* v. *Peterson,* the court's analysis is somewhat difficult to discern. While the court purported to rely on *Flores* v. *Brown* and *Edwards* v. *Freeman,* the decision on its face appears to rest on grounds other than the existence of control: "It is obviously eminently desirable that before a parent dispatches a 16-year-old youngster on a family errand in a family car, he should contemplate the legal consequences of doing so. Our law's refusal to immunize a tortfeasor from the consequences of his wrong simply because his victim accepted a familial amenity, certainly does not mandate that we ignore the vital policy considerations which impose on principals vicarious liability to the innocent victims of their agents' torts." (*Johnson* v. *Peterson, supra,* 38 Cal.App.3d at p. 624, fn. omitted.) Unfortunately, while it quotes *Flores* v. *Brown* to the effect the right of control may be inferred from the owner's power over the way his automobile is operated, the court in *Johnson* is eloquently vague about whatever conclusions it may have drawn concerning the element of control. We read *Johnson* to stand for the proposition that on the facts before the court, an agency existed because the principal's right of control was proven, founded upon the dominion of a parent over a minor child. If this is not a correct reading of *Johnson* v.

*Peterson,* then we must take issue with it, as it conflicts with the Supreme Court's authoritative decisions in *Edwards* and *Flores.*

Moreover, St. Paul places great reliance on the Browns' power, by use of Ash's card, to create a debtor-creditor relationship between Kingsrow and Chevron, a third party, for the cost of the gas and thereby alter their legal relationship. (See *McCollum* v. *Friendly Hills Travel Center* (1985) 172 Cal.App.3d 83, 91 [217 Cal.Rptr. 919].) However, St. Paul has confused a manifestation or characteristic of an agency relationship with the element—control—essential to its very existence.

" 'The chief characteristic of the agency is that of representation, the authority to act for and in the place of the principal for the purpose of bringing him or her into legal relations with third parties. [Citations.]' . . . 'The significant test of an agency relationship is the principal's right to control the activities of the agent. . . .' " (*Id.* at p. 91; see also *Stevens* v. *Roman Catholic Bishop of Fresno, supra,* 49 Cal.App.3d at p. 884.)

St. Paul's further contention that Mr. Brown and Kingsrow, through Ash, entered into an oral contract of agency by which Mr. Brown "promised" to secure the fuel is without support in the evidence. The facts do not disclose any "bargain in which there is a manifestation of mutual assent to the exchange and a consideration." (Rest. 2d Contracts, § 17; Civ. Code, §§ 1549, 1550.) Ash's request or suggestion that the Browns stop at the station was not the "manifestation of [a] willingness to enter into a bargain, so made as to justify [Mr. Brown] in understanding that his assent to that bargain is invited and will conclude it." (Rest. 2d Contracts, § 24.) Mr. Brown retained the freedom to visit the station or not to visit the station, at his election. "[W]here performance is optional with one of the parties no enforceable obligation exists." (*Lawrence Block Co.* v. *Palston* (1954) 123 Cal.App.2d 300, 308 [266 P.2d 856], disapproved on other grounds in *Mattei* v. *Hopper* (1958) 51 Cal.2d 119, 126 [330 P.2d 625].)

Accordingly, the trial court's conclusion that "the driver was operating the vehicle on his own account and not as an agent of the dealer at the time of the accident" was the only correct conclusion which could have been legitimately drawn from the evidence before the court. This result is consistent with the "sound public policy to place the primary liability upon the party who is the most responsible for the loss and who was in the best position to have avoided it, thus encouraging the negligent party to exercise due care." (*Zurich-American Ins. Co.* v. *Liberty Mut. Ins. Co.* (1978) 85 Cal.App.3d 481, 488 [149 Cal.Rptr. 472].)

## II.

Respondent in its brief renews its plea, previously advanced on a motion to dismiss this appeal, filed on March 13, 1989, that appellant's notice of appeal was untimely. On April 17, 1989, this court, without reserving the issue, denied the motion. This unconditional disposition put the matter to rest. (Cal. Rules of Court, rule 41(b); 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 502, pp. 488-489.)

## III.

The judgment is affirmed; costs are awarded to respondent.

Stone (W. A.), Acting P. J., and Baxter, J., concurred.